## No. 28,316.

THOMAS A. RAYL, *Appellee,* v. THE CENTRAL TRUST COMPANY et al., *Defendants;* THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *Appellant.*

(272 Pac. 147.)

Opinion filed December 8, 1928.

E. T. Foote, of Hutchinson, Dean McElhenny, Bennett R. Wheeler, S. M. Brewster and John L. Hunt, all of Topeka, for the appellant.

C. M. Williams, D. C. Martindell, W. D. P. Carey, all of Hutchinson, and John M. Martin, of Los Angeles, Cal., for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff commenced this action to quiet his title to a quarter section of land in Reno county. The Central Trust Company disclaimed any interest therein. The Equitable Life As-

surance Society filed an answer and cross-petition in which it set up a mortgage on the real property executed by Levi Rayl, the father of the plaintiff, and asked for foreclosure of the mortgage. Judgment was rendered in favor of the plaintiff, and the Equitable Life Assurance Society appeals. There were a number of defendants in the action, but the Equitable Life Assurance Society is the only one of them which is now interested in the controversy.

The plaintiff in his petition alleged that the real property had been given to him by Levi Rayl, his father, under an arrangement which had been made with Julia Ann Rayl, the mother of Levi Rayl, by which Levi Rayl agreed with Julia Ann Rayl that upon her death he would purchase from the other heirs of Julia Ann Rayl their interest in the real property and give the same to the plaintiff. The petition alleged that Levi Rayl, to carry out the arrangement with Julia Ann Rayl, verbally gave the property to the plaintiff, and that the plaintiff entered into possession of the property and afterward constructed valuable improvements thereon. The petition also alleged that five years after plaintiff had accepted the gift and taken possession of the property, and more than two years after the plaintiff had made the improvements thereon, Levi Rayl, without the knowledge or consent of the plaintiff, executed to the Central Mortgage Trust Company of Topeka a mortgage on the land, and that the mortgage, which had been assigned to the Equitable Life Assurance Society, was null and void. That mortgage the Equitable Life Assurance Society seeks to foreclose in this action.

The judgment recites:

"In this case the court finds for the plaintiff, as to my mind the evidence is clear and convincing on the part of the plaintiff that his father, Levi Rayl, intended to and did give to him the quarter section of land in controversy, and always considered and treated it as his property, although the father retained title in himself. I also find that this particular quarter was bought by the father from his mother's estate under an agreement with his mother and understood by the rest of the family, that he would purchase it and give it to the plaintiff. . . .

"I think the evidence is conclusive of the gift, delivery of possession and the expenditure of money and improvements relying upon and under and by virtue of said possession."

Appellant argues that there was no competent evidence to show that there had been a gift of the land by Levi Rayl to the plaintiff nor to show the terms of the gift. There was evidence which tended to prove that Levi Rayl, before Julia Ann Rayl executed her will,

promised her that he would buy the interest of each of the other heirs of Julia Ann Rayl in the real property in controversy and give that property to the plaintiff; that Levi Rayl purchased the interest of the other heirs of Julia Ann Rayl in that property; that the plaintiff entered into the possession of the property; that he desired to erect a house thereon; that Levi Rayl told his daughter, a sister of the plaintiff, to go to the latter and tell him that the property was his, and later told the daughter to tell the plaintiff that he could erect a house thereon; that the daughter communicated those messages to the plaintiff; that Levi Rayl had on a number of occasions and to a number of persons stated that the property was owned by the plaintiff and he could do as he pleased with it; and that Levi Rayl had stated he had no interest in it. The evidence showed that the plaintiff was subject to call for service in the World War, and that in an effort to secure a deferred classification for that service both he and his father stated in affidavits filed by them that the plaintiff owned the property in controversy and was farming it. That was done before the mortgage held by the appellant had been executed.

There was no evidence to show that the father had ever said to his son, the plaintiff, "I give you this land," or any other words to that effect. That brings this case within the rule declared in *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354, where this court said:

"The record examined, and held that the evidence is insufficient to supply the requisite and essential elements of a parol contract between a father and daughter for the devise or conveyance of 80 acres of land." (Syl. ¶ 1.)

The court in that case, to show on what the conclusion reached was based, also said:

"This court would cheerfully affirm this judgment, for there is no doubt of Johanna's merits and deserts, but counsel for Agnes have the right to insist, before the judgment against her can stand, that the essentials of a contract between Johanna and her father be first established. This, we confess, baffles us. Counsel for the appellee seek to assist us in this perplexing dilemma. To do so, they quote from the abstract:

" 'Dan Casey [witness]: It was about Christmas time in 1894. Mr. Harrington said he really didn't know how he would have got through the hard years if it had not been for her helping him; that he would have lost his home. And he said, I will never forget Johanna, and I have promised, and I will divide my property equally between my two girls, and Johanna will get the eighty acres of school land, which is the way he described it. Said

she had sent him money; if it had not been for Johanna he would have lost his home. We got to talking about the girls, and he got to talking about his property, and he said he was going to do for the girls just what they done for him, especially Johanna. He was going to divide his property with her and Ag.' And he told me that not once, but several times. She had done for him, and he would do for her, and that he would divide with these girls. She worked for him, and he would divide up for her like she done for him; and he also said he stayed with him—if it hadn't been for her he couldn't have stayed there at all. He told me that Johanna sent him money.'

" 'Flora Kleinneger [witness]: One of the times when I was visiting at the home of Timothy F. Harrington, he told me the two girls should share equally in the will with the exception of Johanna Nash. She should have the school land, as that was already hers. . . . He further stated to me at that time had it not been for Johanna Nash he would have lost all of his property, for she was the one that went out and tided him over the poor seasons. . . . He spoke about the school land and he stated to me that the two girls, meaning Johanna Nash and Agnes Harrington, to share equally under his will with the exception that the school land should all be Johanna's that was already hers.'

"There was much of this sort of testimony, but does that prove an agreement between two parties which may be enforced in equity? We think not. It merely shows how greatly Harrington appreciated his daughters, and what, at those particular times, were his intentions towards them. . . .

"In the cases where oral contracts for the conveyance of land have been upheld by this court, it will be found that there was evidence tending to prove the primary facts constituting the contract. Once some such evidence was forthcoming, then such testimony as that of the witnesses Casey and Kleinneger, quoted above, would perform the valuable function of reinforcement or corroboration, by showing that the evidence to support the main proposition was true. But the testimony of Casey and Kleinneger (and the other testimony to the same effect) is corroborative of what? Nothing, because of an utter want of the matter of prime importance—some evidence that Johanna and her father made the contract relied on. The evidence to prove the contract need not be direct, but it must, in sum, be established by clear and satisfactory proof."

More might be quoted from that case, but it would unnecessarily lengthen this opinion.

The judgment is reversed because the evidence was not sufficient to show that a gift had been made. The trial court is directed to render judgment in favor of the Equitable Life Assurance Society, foreclosing the mortgage held by it.