No. 28,943.

MINNIE A. COUNTRYMAN, *Appellee,* v. EFFIE E. MERWIN et al., *Defendants;* ELMER L. MERWIN, *Appellant.*

(282 Pac. 724.)

Opinion filed December 7, 1929.

*Harold Payne,* of Kinsley, for the appellant.

*A. L. Moffat,* of Kinsley, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the partition of a small farm the record title of which stood in the name of the late Adelia Harriet Merwin, of Edwards county, who died intestate on February 2, 1928.

The litigants are her children, two daughters and two sons. Plaintiff brought the action sounding both in ejectment and partition, and impleading her sister and two brothers as defendants. Issues were joined by the answer of one brother, Elmer L. Merwin, who claimed exclusive ownership of the farm by reason of an alleged parol gift of it from his mother thirty years ago. He alleged that immediately pursuant to that parol gift he had entered into possession and had occupied the premises uninterruptedly ever since, and had paid the taxes and had made lasting and valuable improvements thereon, and that his possession had been "open, notorious, hostile, and adverse" to the rights and claims of all other persons.

The cause was tried by the court without a jury. It was shown that the mother of the litigants had filed on the land in 1885 and had received a patent for it, and that she resided thereon until 1899 when she and one of her daughters removed to Kinsley, at which place she resided for the rest of her life. Prior to 1899 the plaintiff and one son of Adelia had left home.

The defendant, Elmer L. Merwin, was married in 1898 and he and his wife took up their abode with his mother, and after she removed to Kinsley he remained on the farm and reared a family there. He has occupied the premises ever since except for an interval of one year when a neighbor farmed the land and paid the rent share of the crop to him.

Elmer made a number of improvements on the little farm—a well, a windmill, a cave, a small addition to the house, a porch, granary and barn. He also planted some trees and shrubs and built some fences. The farm originally contained thirty acres, but by accretion from the Arkansas river it had grown to sixty-eight acres.

The only evidence to support the oral gift of the farm was given by Elmer's wife. She testified:

"I am the wife of Elmer Merwin. We were married December 28, 1898. We went to live down on the place by the river when we were married, . . . Besides Mr. Merwin and myself, his mother and his sister Effie were also living there when we went there. Shortly after our marriage they moved to Kinsley. . . . I had a conversation with Adelia Merwin about the . . . property once. It was between the time when I came there and when they moved to town. And that was in 1899. She and I were driving some place with a team and buggy. There was no one else in the party. About the place, she said she had told Elmer he could have the place, because in the winter time she could not feed and take care of the cows, she could get along in the summer, and when he got old enough he could have went away, but he stayed with her and she wanted him to have the place. Those were the words that she used just as near as I can remember them. She said she was going or had given it to him."

There was testimony that the farm was known in the vicinity as "Elmer's place," and one time in a business project when he was required to make a statement of his property he listed it as his own.

On the other hand, there is no evidence that the mother knew of Elmer's claim of ownership. She spoke of the farm as her own; she often spoke of a desire to return to it. During the last ten years of her life she was blind and applied to the federal government for an increase of pension as the widow of a union soldier, and being

required to make a verified statement of her assets she listed the farm as her property. Furthermore, receipts for taxes for all the years 1904 to 1927, inclusive, bore the name of the mother as payor except the years 1921, 1922, 1924 and 1925. In 1923 one-half the taxes were paid by Elmer and one-half by his mother. How he came to pay these four and a half years' taxes was not shown, but the fact itself is not fairly susceptible of a construction adverse to his mother's title.

The trial court made findings of fact, some of which read:

"4. Adelia H. Merwin in 1899 and before Adelia moved to Kinsley told Mrs. Elmer Merwin that she had or was going to give the land in controversy to Elmer; . . .

. . . . . . . . . . . . . . . .

"6. . . . There was no evidence that Adelia H. Merwin knew of Elmer's claim to the land in question, or knew of the manner in which it was referred to in the community where the land was situated."

The trial court's conclusion and judgment were that the property was owned in common by the litigants and that it should be partitioned accordingly.

Defendant appeals, invoking the principle of law that a parol gift of land may ripen into a perfect title by adverse possession. Here, however, it cannot be said that the parol gift was proved. It was not shown that the mother had given the farm to Elmer, but only that she told Elmer's wife, "She was going or had given it to him." If that scant morsel of interested testimony were sufficient to prove a gift of a farm from mother to son and the consequent disinheritance of his brother and sisters, the title to real estate would be one of precarious tenuity indeed. Fortunately the security of titles in this state rests on no such flimsy foundation. (R. S. 33-105; *Long v. Duncan,* 10 Kan. 294; *Baldwin v. Baldwin,* 73 Kan. 39, 46, 84 Pac. 568; *Nash v. Harrington,* 110 Kan. 636, 205 Pac. 354; *Rayl v. Central Trust Co.,* 127 Kan. 131, 272 Pac. 147.)

It is argued that the circumstances made it impossible to suppose that Adelia did not know of defendant's adverse claim of ownership. We cannot assent to that. The circumstances were not unusual. Nothing is more common than for farmer folk in their old age to move to town and let a son or daughter occupy the farm either on nominal terms or at a rental which is not as exactingly collected as against a tenant not a member of the family. Every year Elmer brought provisions and wood from the little farm to his mother. Doubtless she was quite content with what she annually received

from Elmer, taking into consideration the small improvements he was making on the farm from time to time, which perhaps added to the value of her property. Probably the mother never took the trouble to consider whether the provisions and fuel Elmer was accustomed to bring her was a rental payment or merely a token of his filial affection. This court will not countenance the idea that an elderly parent needs to be on the alert about matters of that sort in dealing with her children. In 2 C. J. 157-158 it is said:

"Possession by a child of land belonging to his parent will not ordinarily be considered adverse. Thus where a child enters by consent of the parent, looking to the parent for title, the possession is not adverse in the absence of some act or declaration indicating an intention to claim adversely. . . . . In order to render the possession adverse there must be an open disclaimer of the parent's title and assertion of a hostile title brought home to the parent."

It is finally urged that, in any event, Elmer is entitled to be compensated for his improvements. We think not. In order to be entitled to reimbursement for improvements defendant would need to have had some color of title. (R. S. 60-1901; 14 R. C. L. 25, 26; 31 C. J. 309, 328, 330; *C. B. U. P. Rld. Co. v. Hardenbrook*, 21 Kan. 440.) Here defendant had no title of any sort, and no equitable circumstances were shown to bring the case within the rule announced in *Mercer v. Justice*, 63 Kan. 225, 65 Pac. 219, syl. ¶ 2.

The judgment is affirmed.