No. 32,989

MARY F. CARLS, *Appellant*, v. HERMAN J. CARLS, *Appellee*.

(65 P. 2d 257)

Opinion filed March 6, 1937.

*Oscar Raines* and *W. E. Atchison,* both of Topeka, for the appellant.
*Edward Rooney,* of Topeka, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This was an action in ejectment and for the partition of a tract of about 156 acres of farm land in Jefferson county. The jury answered special questions and returned a verdict for defendant. Plaintiff has appealed.

Briefly, the record discloses the following facts, concerning which there is no substantial controversy. Plaintiff and Henry G. Carls were married about 1882, and with no property to speak of, engaged in the business of farming for a few years in Clay county, and for some years afterward in Osage county. By about 1912 they were the parents of five children, of whom the defendant is the eldest son, and they had accumulated a substantial amount of property. They sold their Osage county farm for $30,000 and the personal property on the place for about $10,000. In selling the farm they took a

mortgage on it for $14,000. This was taken in the name of the plaintiff. It appears that with the proceeds of this mortgage an 80-acre tract of land was purchased in Jefferson county in the name of plaintiff, but this is not the land in controversy here. It appears also that from the proceeds of the sale of the Osage county property the farm here in question was purchased, the title being taken in the name of the husband, Henry G. Carls. The parties lived on this farm for a few years. About 1918, or a little later, a residence property was bought in Los Angeles, perhaps for the balance of the proceeds of the $14,000 mortgage. Since that was done plaintiff has lived in that home most of the time, with a married daughter and her husband and her youngest son, while her husband continued to live most of the time in Kansas. He made several trips to Los Angeles and lived with his family there for from a few weeks to several months at a time, and plaintiff was in Kansas living with her husband for comparatively short periods on several occasions. The husband sent his wife money for living expenses, or a portion of them, and also for the education of the boy with her, and later sent the boy money on perhaps three occasions, aggregating about $2,500. From about 1918 to 1925 Henry G. Carls lived on the farm in controversy with the defendant, who was farming the place, and his family. Defendant's wife died in 1925 and thereafter the father made his home elsewhere. Henry G. Carls died in June, 1933. In February, 1933, he had executed and delivered to defendant a deed for this farm. Plaintiff did not join in the execution of that deed and knew nothing about it until after the death of her husband. About the time he executed this deed Henry G. Carls distributed among his other children government bonds which he owned of the value of perhaps $10,000 and some bank stock in the bank at Wakarusa. He sent $3,000 worth of these bonds to his youngest son, who was then living with his mother in Los Angeles. The estate of Henry G. Carls was not administered upon. After his death the plaintiff, as his surviving widow, claimed an undivided one-half interest in the farm in controversy. Defendant claimed to be the absolute owner of it. Hence this action.

Plaintiff's petition recited the pertinent facts above stated and sought to recover a half interest in the tract of land and possession thereof. Her claim was predicated upon our statute, G. S. 1935, 22-108, which, so far as here pertinent, provides that the surviving wife have set off to her in fee simple one half in value of all real

estate in which the husband, at any time during the marriage, had a legal or equitable interest, and of which the wife has made no conveyance. In his answer defendant claimed title by virtue of fifteen years' adverse possession, and further claimed that about the time the farm in Osage county was sold his parents had made a separation agreement by which their property was divided under such terms that H. G. Carls could convey the property that stood in his name without his wife's consent. These defenses were put in issue by a reply. At the beginning of the trial defendant admitted one half of the property would belong to plaintiff if it were not for the matters pleaded in defense. To establish these defenses defendant assumed the burden of proof and offered his evidence. Plaintiff's demurrer thereto was overruled, and plaintiff introduced her evidence. Answering special questions, the jury found defendant had been in the adverse possession of the property for more than fifteen years when the action was brought, and also found that there had been a property settlement between the plaintiff and her husband, Henry G. Carls, by which their property had been divided between them. Plaintiff moved to set aside these answers to special questions, and to set aside the general verdict on the ground of the lack of substantial competent evidence to support them, and also moved for a new trial. These motions were overruled and judgment was rendered for defendant.

In this court plaintiff contends there is no substantial evidence to support either of the defenses pleaded by defendant and found by the jury. In support of the defense of adverse possession defendant testified that he sowed wheat on this farm in the fall of 1917 and moved there with his family in March, 1918, and that he had claimed it as his home since then; that his father lived with him until a short time before his wife died in 1925, and that since then he and his two daughters have lived there. When asked what improvements, if any, were put upon the place he answered, "We built a garage" in 1920. He further testified that in February, 1933, his father gave him a deed for the farm, which he recorded. A witness, Joseph Uhlman, called by defendant, testified that he had lived near this farm for ten years, was well acquainted with defendant, and saw him frequently; that he had also known defendant's father for more than thirty years, having first become acquainted with him when they lived near each other in Osage county in 1902; that on one occasion, in 1920 or 1921, he met de-

fendant's father in Topeka and visited with him, and at that time defendant's father said he had given this farm to Herman. On cross-examination, and again on redirect examination, when asked to state the language used on that occasion by defendant's father, he said the language used was, "I am going to give the farm to Herman." The witness further testified that Herman had paid his father rent up until a few years before the father's death; that on one occasion the father came there to get rent corn, and that defendant had told the witness he was paying his father rent. Lucile Carls, defendant's daughter, called as a witness in his behalf, testified that in the early twenties she was living on the farm with her parents, her sister and her grandfather, and that she had heard her grandfather say "that that place was our place," meaning by the word "our" her father and "we kids," and that on several different occasions she had heard her grandfather make statements of that character. This, in substance, is all of the evidence offered by defendant in support of his claim for adverse possession. Clearly it is insufficient to establish adverse possession, even as against his father, and certainly not as against his mother. The evidence offered by plaintiff on this point did not strengthen defendant's claim of adverse possession. It was to the effect that defendant went on the place as a tenant, and that he had paid rent, sometimes not as much as his father thought he should, up until perhaps two years before his father's death. It was further shown that the land was taxed in the father's name all of that time, and that the father paid the taxes thereon, amounting frequently to more than $400 per year. On rebuttal defendant contradicted the testimony of one witness, who had testified to a conversation in which he had acknowledged himself as being a tenant, but he did not contradict the testimony of other witnesses who testified to such conversations, nor did he attempt to contradict or explain letters written by his father to his mother with respect thereto; neither did he testify that he had not paid rent, or that he had not occupied the place as a tenant. To establish title by adverse possession, as against his mother, defendant had the burden of showing that his claim of holding possession adverse to her was in some way brought to her attention. (*Countryman v. Merwin,* 129 Kan. 317, 282 Pac. 724. See, also, 2 C. J. 161; 2 C. J. S. 658.) Ordinarily, occupation by a child of land owned by his parents is not deemed to be adverse or hostile as to them.

With respect to the division of the property, the principal evidence offered by defendant was given by the witness H. H. Cowell, the husband of the plaintiff's sister. He lived in Clay county and had known the Carls 45 years. He testified that he visited the Carls and stayed all night with them in May, 1925; that when he was getting ready to leave in the morning Henry G. Carls said he wanted to talk to him, and told him that some time before, Mrs. Carls had demanded of him a division of the property, and that he had made a division and given her half of the property; that Mr. Carls had at that time a little piece of paper that looked as if it came from a tablet, on which it was written down, and that he enumerated the property he had given to Mrs. Carls, the plaintiff, and the money he had sent her, and said it was between $32,000 and $35,000; that he told the witness how he expected to divide his property, "said the farm was Herman's and the other children would divide equally, and that his wife had had hers. When he was through with it." This evidence was offered in rebuttal. Plaintiff had been asked about a division of the property and had testified there had been no division, except when the farm in Osage county was sold, the $14,000 mortgage was taken in her name; that the rest of it was invested in his name, but there never had been any agreement that this was a final division of property between them, or that either one of them should not inherit property from the other. The testimony of Mr. Cowell is far short of establishing the defense pleaded. It does not purport to include any agreement to the effect that thereafter neither should inherit from the other. Strictly speaking, it is evidence only of what Henry G. Carls said, not of what agreement was actually made; but taken at its strongest import, as though Henry G. Carls had given the testimony, it contains nothing indicating division of property between husband and wife coupled with a binding agreement that one should not inherit from the other. They had accumulated their property by their joint efforts. There is nothing wrong in a husband and wife having title to property they have accumulated part in the name of one of them and part in the name of the other. Neither is the situation especially unusual. That fact alone, and it is the most this evidence tends to show, does not even tend to prove that the parties had a binding agreement abrogating as to them the laws of the state relating to the devolution of property in the event of the death of one of them.

Appellee stresses the amount Henry G. Carls gave to his other children, particularly to the youngest son. There are two answers to this: (1) That was the father's business, not the business of this appellee, and (2) there is no showing the half of this farm in controversy is not worth more than he gave to any of his other children.

The result is, there is no substantial evidence to support the second defense relied upon, or the finding of the jury respecting it. Plaintiff's motion to set aside the answers made by the jury to the special questions and their general verdict should have been sustained, for the reason that there was no substantial evidence to support them. Plaintiff's demurrer to defendant's evidence should have been sustained.

The judgment of the court below is reversed, with directions to set aside the judgment in favor of defendant and to render judgment for plaintiff for an undivided one-half interest in the farm in controversy, and that such further steps be taken in the action as are proper to set off to plaintiff one half in value of the real property in controversy.