No. 26,375.

The State of Kansas, *Appellee,* v. Clarence (Pat) Evans,
*Appellant.*

### SYLLABUS BY THE COURT.

1. Criminal Law—*Motions for New Trial—Newly Discovered Evidence.* Motions for new trial on the ground of newly discovered evidence should be scrutinized with care in order to prevent fraud and imposition on the court.

2. New Trial—*Ex Parte Affidavits in Support of Motion—Weight and Sufficiency.* The rule that courts are not required to believe an unreasonable story, even though not contradicted, merely because sworn to by a witness, applies with equal if not greater force to a statement in *ex parte* affidavits filed in support of a motion for new trial.

Appeal from Montgomery district court; Joseph W. Holdren, judge. Opinion filed October 10, 1925. Affirmed.

*Walter S. Keith* and *Harold McGugin,* both of Coffeyville, for the appellant.

*Charles B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, *B. W. Berg,* county attorney, and *W. B. Grant,* deputy county attorney, for the appellee.

The opinion of the court was delivered by

Hopkins, J.: The defendant appeals from a conviction of robbery in the first degree.

There was evidence showing that about two o'clock on the morning of April 18, 1924, the defendant, together with three companions, held up and robbed Henry E. Hopkins, agent of the Santa Fe railway station at Caney; that the defendant Evans, with one of his partners, who was in the back seat of a touring car, got out and entered the depot. They came through the waiting room to the ticket window. Evans was unmasked. The room was light. He demanded of Hopkins that he open the door between the private office and the waiting room. They took money of the company amounting to $38.39. They ordered the agent into the automobile, drove about two and one-half miles on the Caney-Coffeyville road and discharged him from the car. The car proceeded toward Coffeyville. The two in the front seat were masked, as was the partner of the defendant Evans who came into the depot. There was evidence that the defendant had done little work, but had engaged to work for a Mr. Wintrode; that he reported for duty at eight o'clock

1. Criminal Law, 16 C. J. § 2762; 42 L. R. A., n. s., 903; 20 R. C. L. p. 289.
2. Id., 16 C. J. § 2754.

the morning of April 18, 1924, the same morning as the robbery, and while there got a telephone call and left without informing anyone why he was leaving or where he was going; that he worked there only a few minutes before getting this call, and never returned; that his whereabouts were unknown to the officers until his arrest, August 25, 1924.

Hopkins positively identified the defendant Evans as the man who robbed the station. On cross-examination defendant's witness, Glen Kemerer, testified that he was in charge of the Guy Walton rent-a-car business during the night of April 17 and 18, 1924; that Don Turner came to that place of business, together with one Swanson, and rented a Ford touring car which was returned at 12:30 a. m., April 18; that there was some one in the back seat that Kemerer could not positively identify; that after checking in this car Turner again rented it, and left shortly thereafter; that Kemerer was still in charge of the business when Turner again returned with the car; that Kemerer checked the car in; that it had gone forty-nine miles; that the distance from Coffeyville to Caney is about twenty miles. On cross-examination Clarence Bailey, another of defendant's witnesses, testified that the four were out riding that evening in the Ford touring car; that he and Evans were in the back seat.

The defendant complains of but one error, that of overruling his motion for a new trial, which was on the ground of newly discovered evidence, which, if believed, would tend to prove an alibi. He filed affidavits of two women, Martha Francis, sixty-five years old, owner of a rooming house in Coffeyville, and Minnie Berner, an employee, thirty-five years old. Both affidavits stated that on the night of April 17, 1924, their roomers were giving a birthday party to one J. C. Woodward; that at about two o'clock in the morning (April 18) the defendant Evans, whom both women had known for years, came to the house so drunk that he could scarcely walk; that he called for Minnie Berner and was so noisy and boisterous that they got a taxicab and sent him home; that he stayed there about an hour, growing drunker all the time. Both women knew Evans' mother, but did not tell of the circumstance until after they saw the account in the newspaper of the arrest and conviction of Evans.

An affidavit of the defendant states that he went automobile riding the evening of April 17, 1924; later left the auto, and in company with Clarence Bailey, called on some friends for about an hour, left the friend's place about 1:15 a. m. (April 18), and returned to

town, where he obtained a pint of corn whisky and drank half of it; that he intended to hunt up a friend with whom he had played cards sometime before, but he soon became so drunk that he did not know what he did nor where he went. Had no recollection of being at Mrs. Francis' house nor of being sent home in a taxi; all he knew was that he was at home in bed the following morning.

Defendant argues that the newly discovered evidence, if believed, will entirely obliterate the evidence of the witness upon whose testimony his conviction was based; that a man could not be drunk in Coffeyville at two o'clock and at the same time be in Caney, twenty miles away, robbing a person at the point of a gun.

Doubtless defendant is correct in the assumption that if what is stated in the affidavits were believed it would obliterate the evidence on which he was convicted. The trial court, having heard and considered all the evidence and having likewise considered the motion for new trial and the allegations of the affidavits, apparently did not believe the statements. In the affidavit of the defendant himself it is stated that in the early part of the night he went automobile riding with some friends. What friends? He does not say, nor does he show any effort to produce them at his trial in order to prove his whereabouts. He states that at about 12:30 he left the automobile in which he had been riding and called on a friend or some friends for approximately an hour, but he does not name them nor show any effort to produce them at the trial to prove his whereabouts. He states that about fifteen minutes after one he went west on Eighth street in Coffeyville as far as the post office, turned north, walked to Fifth street, turned east and returned to town, obtained a pint of corn whisky, and in about fifteen minutes drank half of it. But he does not state the name of the person from whom he procured the whisky, nor the place, in order to prove his whereabouts at that hour of the night. He continues that it was his intention to seek out a friend with whom he played cards a short time before. But he does not give the name of this friend nor where he played cards a short time before in order to prove his whereabouts on the night in question.

The trial court considered all of these matters. It was a question of fact, rather than one of law. That court was in a far better position than we are to say whether or not a new trial should be granted. It would not have been justified in granting a new trial unless satisfied, under all the circumstances, that the defendant was

entitled to it. We are of the opinion that, from all the circumstances as they now appear, the trial court was amply justified in not believing the claims of the defendant and in refusing a new trial.

In *People v. LeMorte,* 289 Ill. 11, it was said:

"Applications for new trial on the ground of newly discovered evidence are not looked upon with favor by the courts, 'and in order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice as a last resort to escape the consequences of an adverse verdict, such applications should always be subjected to the closest scrutiny by the court, and the burden is upon the applicant to rebut the presumption that the verdict is correct and that there has been no lack of due diligence. The matter is largely discretionary with the trial court, and the exercise of its discretion will not be disturbed except in a case of manifest abuse.' (20 R. C. L. 289.) In *People v. Williams,* 242 Ill. 197, 89 N. E. 1030, 17 Ann. Cas. 313, this court had occasion to consider what was necessary to be shown in order to justify a new trial on the ground of newly discovered evidence, and stated that the evidence must be such as will probably change the result if a new trial is granted; that it must have been discovered since the trial and be such as could not have been discovered before the trial by the exercise of due diligence; that it must be material to the issues, and must not be merely cumulative to the evidence offered on the trial. These same requirements are substantially set forth in Wharton's Criminal Pleading and Practice (8th ed.), § 866. It has been frequently stated by this court that newly discovered evidence, on motion for new trial, must be clearly conclusive in its character to require the court to grant a new trial. (*Henry v. People,* 198 Ill. 162, 6 N. E. 120, and cases there cited.) . . . Courts are not required to believe an unreasonable story, even though it is not contradicted, merely because it has been sworn to by a witness on the trial of the case. (*People v. Davis,* 269 Ill. 256; *Stephens v. Hofman,* 275 Ill. 497.) This rule applies with equal if not greater force as to relying on and believing *ex parte* affidavits on a motion for new trial." (pp. 21, 24. See, also, *State v. Nimerick,* 74 Kan. 658, 87 Pac. 722; *State v. Creager,* 97 Kan. 337, 155 Pac. 29; *McIntyre v. Surety Co.,* 97 Kan. 629, 156 Pac. 690; *Hiltabidle v. Bradburn,* 110 Kan. 623, 204 Pac. 707; *State v. Giles,* ante, p. 417; *Fusselman v. Yellowstone Valley, etc., Co.,* 53 Mont. 254; *State v. Matkins et al.,* 45 Mont. 58; *Nicholson et al. v. Metcalf,* 31 Mont. 276; *Territory v. Claypool and Lueras,* 11 N. M. 568; *People v. Rushing,* 130 Cal. 449; *Williams v. State,* 53 Fla. 89; *Stevens v. State,* 93 Ga. 307; *State v. Jones,* 89 S. C. 41; *State v. Danforth,* 73 N. H. 215.)

The judgment is affirmed.