Rooney v. McDermott.

---

No. 26,688.

James Augustus Rooney, *Appellee,* v. Juda McDermott, *Appellant.*

SYLLABUS BY THE COURT.

1. Specific Performance—*Oral Contract to Convey Land—Services of Foster Child—Evidence.* In an action to recover an interest in real property based upon an oral contract that plaintiff should receive an undivided half interest in the estate of his foster parents in consideration of his rendering to them the services, affection and obedience of a son from the time he entered their family at nine years of age until he attained his majority or until their deaths, the evidence examined and held to meet the requisites of the rule requiring such contract to be established by clear, convincing and satisfactory proof by the party claiming rights under such contract.

2. Same—*Pleading—Laches.* Ordinarily, to be effective, laches must be pleaded; and where it is neither pleaded nor proved, it is no defense to an action to recover an interest in land.

Appeal and Error, 4 C. J. pp. 71 n. 97, 72 n. 3. New Trial, 29 Cyc. pp. 886 n. 5, 901 n. 59, 911 n. 94; 20 R. C. L. 292, 294. Specific Performance, 36 Cyc. pp. 692 n. 57, 693 n. 59, 731 n. 28, 782 n. 92, 788 n. 31; 25 R. C. L. 337.

Rooney v. McDermott.

3. APPEAL AND ERROR—*Review of Excluded Testimony—Necessity for Presentation.* Rule followed that excluded testimony not brought into the record and presented in support of the motion for a new trial furnishes no basis for reversible error.

4. SPECIFIC PERFORMANCE—*Evidence—Admissibility.* Error based on excluding from the jury's consideration certain letters considered and not sustained.

5. SAME—*Instructions.* Error assigned on the instructions given and refused considered and not sustained.

6. NEW TRIAL—*Grounds—Newly Discovered Evidence.* Newly discovered evidence which is merely cumulative, or which could readily have been obtained in time for presentation at the trial if diligence had been exercised, or which suggests no probability that in a new trial the newly discovered evidence would change the result, is not sufficient to compel a new trial or to justify reversal of a judgment because a new trial was denied.

Appeal from Kiowa district court; LITTLETON M. DAY, judge. Opinion filed May 8, 1926. Affirmed.

O. G. *Underwood,* of Greensburg, Frank *Reavis* and Maxwell V. *Beghtol,* of Lincoln, Neb., for the appellant.

John W. *Davis,* of Greensburg, and Manvel H. *Davis,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action to recover an undivided half interest in 320 acres of Kiowa county land under a claim thereto founded on an oral contract made during plaintiff's infancy between plaintiff and certain persons concerned in his welfare on the one part and the parents of defendant on the other part.

In substance the alleged contract was that in the year 1891, when plaintiff was nine years old, James T. Wallace and Susan Wallace, parents of defendant, made an agreement with plaintiff and with his custodians, by the terms of which plaintiff was to be received into their family and treated as their own child and to be reared and nurtured as though born to them, they to receive his services and obedience during his minority, and at their deaths plaintiff should receive one-half of their property.

Plaintiff's petition with appropriate recitals set up this contract and alleged that pursuant thereto he entered into the family of James and Susan Wallace and was reared by them as their son and given the name of James L. Wallace, and that he resided with them and gave them his services, affection and obedience until the death of James in 1893, and thereafter he continued to render like service

and obedience to Susan until her death on July 25, 1905, and that he had fully performed his part of the contract.

This action was brought on July 24, 1920. A demurrer to plaintiff's petition which raised the statute of limitations was sustained by the trial court, and that ruling was reversed by this court. (*Rooney v. McDermott*, 113 Kan. 18, 213 Pac. 631.)

The defendant then answered, traversing the allegations of the petition, alleging defendant's ownership and possession; and as to one quarter section of the land in controversy (the Wallace homestead) defendant alleged that she and her mother Susan Wallace became tenants in common of it upon her father's death on January 3, 1893, and that they entered into possession at that time, and that defendant had held open and notorious possession of an undivided half interest in that quarter section since January 3, 1893. Touching the other quarter of land in controversy defendant alleged that Susan Wallace had owned it until her death on July 25, 1905; that Susan died intestate; and that defendant was the only heir of Susan; and that defendant inherited that quarter section, as well as Susan's undivided half interest in the Wallace homestead; and that she had held actual, open and notorious possession of these lands since her mother's death. The answer concluded thus:

"Defendant specifically denied that . . . James T. and Susan Wallace made an oral agreement with the plaintiff and those having the custody of the plaintiff, as alleged in plaintiff's petition, whereby he was to receive at their death one-half of their property, both real and personal, of which they might die seized and possessed."

On these issues the cause was tried. The jury returned a general verdict for plaintiff, and answered certain special questions:

"1. Do you find that James T. Wallace and Susan Wallace made an oral agreement with James A. Rooney, the plaintiff, by the terms of which agreement the plaintiff was to be received into their family and treated as their own child, they to receive his services and obedience until plaintiff was twenty-one years of age, and whereby they agreed that plaintiff should receive at their death one-half of all the property of which they might die possessed? A. Yes.

"2. Do you find that James A. Rooney, the plaintiff, fully performed his part of said agreement? A. Yes.

"Special Questions.

"1. [a] Was there a written agreement made by James T. Wallace and Susan Wallace at or shortly after they took James Augustus Rooney into their home? A. No."

Judgment was entered accordingly, and defendant appeals.

1. It is argued that the judgment is not sustained by the evidence. On that point the record shows the following facts:

Plaintiff was born in Boston, January 1, 1882. When he was about two years old his parents separated, and plaintiff's mother left him at a police station in New York when he was about four years old. He was placed in custody of a society devoted to the care of abandoned children, and when he was about six years of age he was given into the charge of a family named Ward. One member of the Ward family took plaintiff to his abode in Illinois, and some months later another member of the Ward family took plaintiff to Kiowa county and placed him temporarily in the family of defendant's parents, James T. Wallace and Susan Wallace. The Wallace family had one living daughter, the defendant. They had lost two other children by death. They soon became much attached to plaintiff and desired to keep him as their own son. The Ward family, however, wished to take the child back to Illinois, but eventually the Wallaces were permitted to keep him under the agreement which gave rise to this lawsuit. Plaintiff at that time was nine years of age. The Wallace family lived on a farm in Kiowa county. Plaintiff bore the name of J. L. Wallace, and was so known during his school days. James T. Wallace spoke of the lad as his boy, and said he had adopted him, and said the lad would get part of his property. One witness, who knew the circumstances under which the Ward family surrendered the plaintiff to the Wallace family, testified:

"A. After we talked about the Wards wanting him back and they was going to have him adopted, that Mr. Wallace and Mrs. Wallace both mentioned they had made an agreement with Jay if he would stay with them—

. . .

"A. Well, Mr. and Mrs. Wallace said they had made an agreement with this boy, if he would stay with them until he was twenty-one or until their death they would give him half of their property.

. . . . . . . . . .

"Q. When Mr. Wallace told you what you have testified about here, about an agreement, did Mrs. Wallace say anything about that? A. She said they were going to fix all the papers up with that agreement. . . .

"Q. She mentioned the agreement? A. Yes, sir.

"Q. What did she say, if you can remember? A. She says we are going to give J. L. half of what we have got at our death if he stays with us.

"Q. And this was all one conversation? A. All had at the same time.

"Q. And the same people? A. Yes, sir."

Another witness, who had been plaintiff's school teacher, testified

Rooney v. McDermott.

that on one occasion he was visiting at the Wallace home when plaintiff's relationship to the family was discussed:

"A. We were sitting at the supper table; supper was over. Along later and talking, Juda [defendant] had gone out to milk the cows, and I was a little curious to know if that was all the family, or some of them married and gone away, so I asked them if they had any other children. Mrs. Wallace said they had two little children that died in infancy, buried back east.

"Q. What else did she say? A. And she says, 'We took this boy here to raise, and we promised if he was a good boy, behaved himself, and stayed with us until he was twenty-one he should have half of our estate.' And she says, 'Now J. L. [plaintiff], get out of here and help Juda with the cows; get along with you,' she says, 'or I will use my slipper.' So he grabbed his hat and said, 'By shucks,' and went—

"THE COURT: What was that? A. So he grabbed his hat and said, 'By shucks'—kind of a byward he had—and pulled out to the barn."

Another witness, a neighbor and acquaintance of the Wallace family for many years, testified:

"A. She told me that she and James T. Wallace, or Thomas as she called him, had agreed with J. L. Wallace that if he would stay with them during his minority, or . . . until he was twenty-one, and assist Thomas in the farm work that they at their death, or when they died, would give him one-half of their property."

The evidence for the plaintiff tended to show that the hope of Mr. and Mrs. Wallace that plaintiff would turn out to be a helpful, obedient and dutiful son to them was fully realized. And after the death of Mr. Wallace he rendered the usual services of a growing son to Mrs. Wallace, and when defendant married and brought her husband into the Wallace family home the plaintiff continued to do the characteristic work of a farm lad. In 1900 defendant's husband died, after which time plaintiff was his foster mother's mainstay in conducting the farm until after he attained his majority in 1903. The farm was then rented, and Mrs. Wallace moved to Greensburg, where she died on July 25, 1905, and plaintiff started in life on his own account, working for several years as a servant or employee in Kiowa county. When he became of age, his foster mother gave him a team, wagon, and some money and chattels. About that time defendant told him he had no interest in the property, that she and her mother had rented the farm and that he would have to do for himself. Since her mother's death defendant has held possession of the property through tenants. She herself has lived in Nebraska most of the time since April, 1907.

It does not seem to this court that there is either dearth or paucity

of evidence to prove the contract alleged.   Being oral, and made when plaintiff was nine years old, when he was too young to understand the contract made in his behalf with Mr. and Mrs. Wallace by those concerned in his welfare, and being made also with persons now deceased, the contract was proved in about the only way it could be proved—by the testimony of apparently disinterested witnesses who knew the facts concerning the rearing of plaintiff in the Wallace household, and who testified to the candid statements voluntarily and repeatedly made by James T. Wallace and Susan Wallace, telling how they had obtained custody of the plaintiff, and stating the specific terms of the bargain under which he was being reared by them as their own son.   On the record at least, the evidence quite filled the measure of our exacting rule touching the high quality of proof requisite to establish an oral contract to devise, convey or otherwise bestow an interest in land when one party thereto has fully performed his obligation under such contract and the other parties thereto are dead.   (*Hickox v. Johnston,* 113 Kan. 99, 213 Pac. 1060, 27 A. L. R. 1322, and note 1325 *et seq.*)   In *Bateman v. Franklin,* 114 Kan. 183, 217 Pac. 318, the requisite sufficiency of proof in this sort of case was discussed.   The court said:

"The contract, though oral, had been fully performed on plaintiff's side, so the statute of frauds, which was not pleaded, would not bar the action. (*Meador v. Manlove,* 97 Kan. 706, 711, 712, 156 Pac. 731.)   .  .  .   Of course this is the sort of case where the triers of the facts, and especially the trial judge, must be alert to see that estates are not plundered through false and fraudulent claims, and where there must be careful and conscientious sifting of the evidence.   But such claims may be *bona fide,* and when they are such and are established by clear and convincing evidence, they are perfectly legitimate and must be respected and enforced.  .  .  .

".  .  .   There are no new questions of law in this case.  .  .  .   It is merely a question whether plaintiff can clearly and convincingly establish the material facts alleged in his petition."   (pp. 184-185.)

In *Meador v. Manlove,* 97 Kan. 706, 156 Pac. 731, it was said:

"But it is said that the statute of frauds and the statute of trusts and powers bar all consideration of the alleged oral agreements between David and Emma. .  .  .   It has often been regretted by the courts that exceptions have been made to the rule which requires agreements concerning important interests in land to be in writing.   There is much to be said on both sides.   It must suffice here to say that exceptions do exist, and that these statutes themselves recognize that there are such exceptions.   (*Gemmel v. Fletcher,* 76 Kan. 577, 92 Pac. 713; 39 Cyc. 169, 177, 182, 186, 187.)   Many such cases involving the recognized exceptions to the ordinary rule requiring such contracts to be in writing have been considered by this court.   (*Long v. Duncan,* 10 Kan. 294; *Baldwin v.*

*Baldwin,* 73 Kan. 39, 84 Pac. 568; *Gemmel v. Fletcher,* supra; *Bichel v. Oliver,*
77 Kan. 696, 95 Pac. 396; *Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; *Wooddell
v. Allbrecht,* 80 Kan. 736, 104 Pac. 559; *Bless v. Blizzard,* 86 Kan. 230, 120 Pac.
351; *Nelson v. Schoonover,* 89 Kan. 388, 131 Pac. 147; *Holland v. Holland,* 89
Kan. 730, 132 Pac. 989; *Smith v. Cameron,* 92 Kan. 652, 141 Pac. 596; *Eadie v.
Hamilton,* 94 Kan. 214, 146 Pac. 323; *Holland v. Holland,* ante, p. 169, 155 Pac.
5.)" (pp. 711, 712. See, also, *Lennen v. Ogden,* 98 Kan. 747, 161 Pac. 904.)

The error assigned on the insufficiency of the evidence to establish
the contract cannot be sustained.

Defendant presses on our attention the matter of laches and the
statute of limitations. The question involving the statute of limita-
tions in this case has already been adjudicated. (*Rooney v. Mc-
Dermott,* 113 Kan. 18, 213 Pac. 631.) To the point of laches urged
by defendant there are several sufficient answers. Ordinarily, to be
effective, laches must be pleaded. (*Thompson v. Colby,* 127 Ia. 234;
36 Cyc. 782.) Here it was not pleaded. Moreover, the record tends
to show that during a considerable portion of the long interval
which elapsed between the death of Mrs. Wallace and the com-
mencement of this action plaintiff was not aware of the rights which
had accrued to him by reason of the contract made in his behalf
when he was only nine years old. Defendant herself was partly re-
sponsible for the delay, since she assured him, when he became of
age, that he must get out and do for himself because he had no in-
terest in the family property. So even if laches had been pleaded, it
was not established.

In *Hudson v. Herman,* 81 Kan. 627, 107 Pac. 35, it was said:

"The doctrine of laches is invoked. Laches was not pleaded, but the appel-
lant urges that it goes to the right of the plaintiffs to recover against him.
Waiving the question of pleading, it may be observed that laches is an equi-
table bar to relief depending on all the circumstances of the case (*Dunbar v.
Green,* 66 Kan. 557, 567), and except in instances of clear error the judgment
of the trial court denying its effectiveness will not be disturbed. In this case
no unusual circumstances appear to shorten the ordinary statutory period of
limitation." (p. 640. See, also, *McGill v. McGill,* 101 Kan. 324, 327, and cita-
tions, 166 Pac. 501.)

Defendant assigns error in rejecting testimony tending to show the
comparative value of Kiowa county lands in 1905 and 1920. Under
the facts of this case it does not appear how such evidence would
have been material; but even so, the proffered testimony was not
brought into the record, and consequently the ruling cannot be re-
viewed. (*Leach v. Urschel,* 112 Kan. 629, syl. ¶ 9, 212 Pac. 111;

*Braymer Mfg. Co. v. Midwest & G. Oil Corporation*, 118 Kan. 439, 235 Pac. 847.)

Error is also assigned on the exclusion of two letters written by plaintiff to the New York society which had concerned itself in his welfare during his helpless infancy. In these letters plaintiff sought to learn whether he had been adopted by the Ward family and what arrangements were made when they transferred him to the Wallace family, and asking for a letter written by Mr. Wallace in 1890 expressing a wish to adopt the plaintiff. In plaintiff's petition he laid claim to one-half the property on two grounds—one founded on his right as a duly adopted son, and the other on his right under the oral contract. The evidence (as it appears to this court, although we are not the triers of the facts) tended rather persuasively to show that plaintiff was adopted by Mr. and Mrs. Wallace; but certain probate court records and other county records of Kiowa county for a period of several years were missing or destroyed by fire, and the adoption of plaintiff could not be indisputably established by record proof; and on motion of defendant the trial court required plaintiff to elect whether he would stand on his claim as an adopted son or on his right under the oral contract made in his behalf. Whether that ruling was quite fair to plaintiff is immaterial now. He elected to stand on the contract, and then, of course, whatever letters or other documents tended primarily or secondarily to prove his adoption and any deductions which might be drawn therefrom went out of the case, and the exclusion of the letters was not error.

Error is urged because the court "gave no instruction with reference to the necessity of the appellee establishing his claim by a preponderance of the evidence, nor did the court instruct the jury that the burden of proof rested upon the appellee." The error thus assigned is wholly void of merit. The case was not the ordinary one where the jury should be told to find for the party adducing a mere preponderance of evidence. Throughout the lengthy but carefully drawn instructions, the trial court appropriately advised the jury to this effect:

"4. . . . In such case, if you are convinced by the evidence by clear and satisfactory proof that said contract was entered into and that plaintiff has carried out his part, then one-half of the property would become vested in the daughter, Juda I. McDermott, and the other half would become vested in this plaintiff in pursuance of said contract. Any personal property, if there was any, is not involved in this litigation; the only matter involved is the real property.

"6. Before the plaintiff can recover in this action he must establish to your satisfaction by clear and convincing proof that the Wallaces entered into the contract as claimed. The Wallaces both being dead at this time prevents the plaintiff from testifying as to the terms and conditions of the contract because of the statute which prohibits the survivor of an oral contract from testifying directly as to its terms, therefore the plaintiff is compelled to prove such contract, if any there was, by other facts and circumstances. You are instructed that a contract of this kind may be proved by circumstantial evidence; but before you can find from circumstantial evidence the existence of such a contract there must be such facts and circumstances proved as indicate convincingly that the contract was made and the terms thereof. . . . If you are convinced from all the facts and circumstances shown in evidence that plaintiff has clearly established his claim of the contract and that he has performed his part of it, then in such case it will be your duty to find for the plaintiff that he is the owner of an undivided one-half interest in the southwest quarter and the southeast quarter of section 10, township 28, range 20; on the other hand, if you believe from the evidence that plaintiff has failed to clearly and convincingly establish the fact of such contract or the performance of his part thereof, then your verdict should be for the defendant.

"7. In regard to the evidence offered concerning statements made by James T. Wallace during his lifetime and Susan Wallace in her lifetime as to the conditions under which plaintiff was living at their home, you are instructed that evidence of such statements made by persons since deceased are to be received by the jury with great caution, because of the liability of witnesses to misstate or misunderstand the statements when made, and to remember inaccurately or misrepresent them afterwards. This is especially true where verbal statements are testified to many years after they were made."

No error appears in the instructions given or refused.

Error is also urged in overruling defendant's motion for a new trial based upon newly discovered evidence. This was presented by affidavits of persons who had lived in the neighborhood during the years when plaintiff was being reared by the Wallace family. The gist of this testimony was that these neighbors at one time or another had heard Mr. Wallace, or Mrs. Wallace, or plaintiff himself, say that all plaintiff was to receive from the Wallaces was a team, wagon, a suit of clothes and some money when he attained his majority. There was evidence to that effect adduced at the trial. This additional evidence offered in support of the motion for a new trial would have been only cumulative, and new trials are not granted thereon as a matter of right. (*Pasho v. Blitz,* 99 Kan. 421, 162 Pac. 1161.) And it was very clearly shown by defendant's own testimony that want of diligence was her only excuse for the non-production of this evidence at the trial, and consequently the over-ruling of her motion for a new trial was not error. (*State v. Evans,*

119 Kan. 469, 472, 239 Pac. 996.) Moreover, a careful reading of the belated testimony suggests no probability that a new trial would produce a different result, and on that ground, also, its denial was not error. (*Brock v. Corbin,* 94 Kan. 542, 146 Pac. 1150.)

A painstaking consideration of the record and the errors assigned thereon discloses nothing which would justify a disturbance of the judgment, and it is therefore affirmed.

HARVEY, J., dissenting.