No. 33,254

Francis J. McEnulty, *Appellant,* v. Sarah McEnulty et al.,
*Appellees.*

(69 P. 2d 1105)

Opinion filed July 10, 1937.

*Andrew F. Schoeppel,* of Ness City, and *R. C. Russell,* of Great Bend, for the appellant.

*J. E. Mowery,* of Dighton, and *H. O. Trinkle,* of Garden City, for the appellees.

The opinion of the court was delivered by

Hutchison, J.: This was an action for the specific performance of an oral agreement made by the mother of the plaintiff with her brother, Patrick Murphy, when the plaintiff was only four and one half years old, to the effect that if plaintiff would go into the home of Patrick Murphy, become a member of his family and reside with him, aid and assist him during his lifetime, then Patrick Murphy would give him all the property he had at the time of his death. The sixth paragraph of the petition is as follows:

"The plaintiff further alleges that about the latter part of the year 1907, the said Patrick Murphy and John McEnulty and Sarah McEnulty, his wife, the parents of this plaintiff, or in the early part of 1908, the exact date not

being known to plaintiff, the said Patrick Murphy, by and with Sarah Mc-Enulty, the mother of the plaintiff, entered into this agreement; and thereupon and pursuant to this agreement which the said Patrick Murphy had made with the said John McEnulty and Sarah McEnulty, his wife, or with Sarah Mc-Enulty alone, the mother of the plaintiff, this plaintiff was sent and did go to the home of Patrick Murphy, who was then a single man, in Lane county, Kansas. And that the said Sarah McEnulty did surrender to the said Patrick Murphy the control and custody of this plaintiff, Francis J. McEnulty, and agreed to give to the said Patrick Murphy the right to have and claim this plaintiff's obedience, society, care and love in all respects as though he was his own son, and the said Sarah McEnulty did relinquish and renounce all of her right and control over this plaintiff as his mother. She further agreed with the said Patrick Murphy that this plaintiff should come and live with the said Patrick Murphy as a member of his family, should aid and assist him with his farm work, minister and take care of the said Patrick Murphy in any and all matters as a child and companion to him, and remain with him until the said Patrick Murphy passed away."

It is further alleged that the plaintiff did go to the home of Patrick Murphy in September, 1908, and has taken care of the cattle, fed and attended the livestock and assisted in the farm work; that the relation of father and son had existed between them until the death of Patrick Murphy on February 24, 1934, and that plaintiff has fully complied with all the promises and agreements to be performed on his part, and plaintiff prayed that he be decreed to be the owner of the real estate and remaining assets in the hands of the administratrix after the payment of the debts and claims, if any, against the estate.

The defendants in the case were the brothers and sisters of Patrick Murphy, including the mother of plaintiff and Bridget Murphy, the administratrix of the estate, who had lived with Patrick and kept house for him since 1906. These defendants, except the mother of plaintiff, filed an answer denying generally the allegations of the petition, pleading the statute of frauds and denying that if such an oral contract ever did exist there was any fair, equitable or adequate consideration therefor.

Evidence was introduced by both parties, and the court made extended findings of fact, some of which are as follows:

"Considering all the evidence, facts and circumstances in the case the court believes and finds that in the month of February, 1908, after the death of the plaintiff's father at Tonganoxie, Pat Murphy requested and urged plaintiff's mother, Sarah McEnulty, to allow him to take the plaintiff, then a child under four years of age, and that he promised her orally that if she would allow him to take and have the child to raise that he would care for him and educate

him, and when he grew up he would give him a start in life, either at farming, should he care to follow agriculture, or set him up in business, if he preferred some other course. These may not be and probably are not the exact words, but the court believes that it is the substance of the promises made. The court is not pursuaded entirely that there was a promise on the part of Pat Murphy to give or leave at his death all of his property to the plaintiff. He may have made such a promise; the court does not feel that the court can say absolutely that he did not. On the other hand, the court is not convinced to that degree of certainty that such a promise was made as to justify the court in so finding and so disposing of the entire estate of the deceased Pat Murphy.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The plaintiff has alleged a contract made in his behalf and for his benefit which, if sustained to the full purport claimed, would authorize the decreeing to him of the entire estate of the deceased Pat Murphy. The fact that the contract pleaded may not in the opinion of the court be supported by the proof to the full effect and purport claimed would not necessarily deprive the plaintiff of the benefits of the contract to the extent the court should be persuaded as to its terms. It is not infrequently the case that the proof falls short of establishing a contract to the full purport pleaded, but nevertheless does establish a contract entitling the claimant under it to some measure of relief.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"The court is of the opinion that upon the facts of this case that the court may and should allow the plaintiff to recover from the estate of the deceased an award in money sufficient in the circumstances shown in evidence to enable the plaintiff to set himself up on another farm with sufficient equipment to carry on with and make a new start, an amount that might be justified on the basis of compensation for services the plaintiff rendered to his uncle between the time he became twenty-one years of age and the time he began to operate the farm under the arrangement referred to in the evidence. The court recognizes that it may be inferred from the evidence that the plaintiff has already received some help and remuneration from time to time. The court has concluded that it might equitably and without prejudice to the just rights of any of the defendants allow the plaintiff an award in the form of a money judgment to be made from the estate of the deceased in the amount of $1,250."

Two questions of law were raised by the answer of the defendants. One was the failure of the plaintiff to show a fair, equitable or adequate consideration on the part of the plaintiff for the performance of the oral agreement alleged. The petition states plainly and positively the work he performed for his uncle on the farm for about nineteen years and the relationship observed and the duties performed, and the evidence of the plaintiff as to the work done by him and their friendly relations is practically uncontradicted. These matters are frequently mentioned by the trial court in the findings.

The other legal point raised by the answer is the bar of the statute

of frauds. Of course, this contract was not to be performed within one year from the time it was made. It was not in writing and it partly concerned a devise of real estate, but the value of the services that were to be and were rendered by the plaintiff for such promise by the uncle could not be estimated or determined satisfactorily in money, and therefore the statute of frauds will not apply, as has been frequently held by this court.

It was held in *Schoonover v. Schoonover*, 86 Kan. 487, 121 Pac. 485, that—

"Where one has rendered services to another under an oral agreement that he is to be compensated by the devise of real estate, the contract may be enforced irrespective of the question of possession, where the services are of such a character that their value in money cannot be satisfactorily determined." (Syl.)

In *Stahl v. Stevenson*, 102 Kan. 447, 171 Pac. 1164, it was said concerning a similar oral promise that—

"Such a contract is not one that is not to be performed within a year, within the meaning of the statute of frauds." (Syl. ¶ 2.)

It was held in *Taylor v. Holyfield*, 104 Kan. 587, 180 Pac. 208:

"An oral contract to the effect that a young man should work and care for an older man and his wife during the lives of the latter, and that he should be treated by them as a child and be given a certain share of their property at their death, is held to have been established by sufficient proof and, it being shown that there was performance of the contract by the young man, and that it was neither unreasonable nor inequitable, it is enforceable.

"The rule that the statute of frauds will not be enforced against one who has performed a contract of the kind in question and who cannot be restored to his original situation, or adequately compensated in damages, applied." (Syl. ¶¶ 1, 3.) (See, also, *Braden v. Neal*, 132 Kan. 387, 295 Pac. 678, and *Smith v. Nyburg*, 136 Kan. 572, 16 P. 2d 493.)

The appellant raises two points concerning the sufficiency of the evidence to establish his contention and the equitable character of the award made by the court to him, calling in question the findings of the trial court from the evidence in the case as to these two matters.

Appellant cites a number of Kansas cases where oral contracts of this character and nature were sustained and upheld and applies those rulings to the facts in the case at bar to show the sufficiency of his testimony as plaintiff for the purpose of proving the contract in its entirety. Among such cases are: *Berry v. Davenport*, 106 Kan. 393, 188 Pac. 223; *Nordboe v. Frye*, 107 Kan. 291, 191 Pac. 282; *Rooney v. McDermott*, 121 Kan. 93, 246 Pac. 183; *Bowen v.*

*Galloway,* 125 Kan. 568, 264 Pac. 1038; *Smith v. Nyburg,* supra; and *Schuler v. Rehberg,* 145 Kan. 176, 64 P. 2d 571, in all of which cases the evidence was held to be sufficient to support the oral contract. A rather definite rule, however, was recognized in the Rooney case, *supra,* in connection with the examination of the evidence in such cases, where, after stating the facts generally, it was further stated:

". . . the evidence examined and held to meet the requisites of the rule requiring such contract to be established by clear, convincing and satisfactory proof by the party claiming rights under such contract." (Syl. ¶ 1.)

In the Bowen case, *supra,* it was held in connection with the findings in support of a similar contract that—

"To enforce such a contract it must appear that it is definite in its terms and purposes, established by clear evidence that causes a convincing implication that it was actually made, and is such as to satisfy the court of its terms and performance and that there is no inequity in it." (Syl. ¶2.)

There is no question in this case about the performance by the plaintiff. His own testimony and that of neighbors and others fully and amply sustain the findings of the court to that effect, but the trial court was not entirely convinced and persuaded as to the promise of the uncle to give or leave all of his property at his death to the plaintiff. The principal witness as to the making of the promise, and as to just what it was, was the mother of the plaintiff, and although due allowance should be made for the failure of memory as to exact words and terms of a promise made twenty-seven years before she testified, yet it cannot well be ignored or overlooked that she made some statements as to the promise made by her brother that seriously varied from the alleged promise of giving or leaving all of his property at his death to the plaintiff. The trial court embodied in its findings five of her statements as to the extent and character of the promise made to her by her brother, which statements are as follows:

"It was if I let this boy go out with him and stay with him at his home, he would give him everything he owned. . . .

"If Francis would stay with him he would feed him, clothe him, and send him to school, and when he was through school if he didn't want to stay with him on the farm, any business he went into he would always help him out. . . .

"He told me if I would let Francis go out and live with him and stay with him he would take care of him all his life and everything he had would go to him when he passed away. . . .

"He just wanted Frank to go out and live with him; he would take care of him, educate him, and if he took an interest in the farm or anything he under-

took to do, go in business or anything, he would help him out; he would always help him out. That's what the conversation was. . . .

"He said if he would go out and stay with him he would give him all the stuff he owned when he died, if he would go out and stay with him; he was on the farm then."

It will be observed readily that while three of these statements support the promise as alleged in the petition, two of them are radical modifications thereof, being promises to help him out in addition to the earlier care, support and education and are reasonably and naturally inconsistent with and serve in a measure to contradict the promise as alleged to give the plaintiff everything.

These modifications as to the extent and character of the promise made serve to make the proof of the alleged promise anything but clear, certain and convincing. It was held in *Brown v. Slusser,* 130 Kan. 834, 288 Pac. 743:

"Where one relies upon an oral contract with a deceased owner of the record title to real estate, whereby a conveyance of such title was promised as a gift or compensation for services rendered, there must be some clear and satisfactory proof of the making of such contract and of the primary facts constituting the same. . ." (Syl.)

In *Heine v. First Trust Co.,* 141 Kan. 370, 41 P. 2d 767, it was held:

"In an action to enforce a contract to bequeath claimant sufficient property to constitute adequate compensation for services rendered deceased in her lifetime, the record is examined, and it is held that the evidence must be definite and certain as to the terms of the contract sought to be enforced. . ." (Syl. ¶ 1.)

We agree with the trial court in its findings to the effect that the proof of the alleged promise to give the plaintiff everything at the death of the uncle is not clear, convincing and conclusive, and that the evidence was insufficient to support that allegation.

As to the equitable character of the award of $1,250 made by the court to the plaintiff, in view of the relations and conduct of the parties it may well be said that the evidence of the mother about the promise of the uncle to "help him out" is a substantial basis for the allowance of such award. The trial court found such a promise had been made by the uncle, and there was sufficient evidence to support such a finding; and although full performance had been made by the plaintiff, nothing definite had been done by the uncle to "help him out" in farming or in business.

It was held in *Masterson v. Masterson,* 100 Kan. 108, 163 Pac. 617, that—

"Where an uncle enters into an agreement that a nephew is to live with him and care for him during his life and in return is to receive his property at his death, and the arrangement is acted upon for a time and then abandoned for reasons not chargeable to one party more than to the other, the nephew upon a settlement should receive some compensation for his services already rendered, and in the absence of circumstances suggesting a different basis may be allowed the proportion of the value of the property that the time the contract was in force bears to that period with the addition of the then remaining life expectancy of the uncle." (Syl.)

It was held in *Haston v. Citizens State Bank*, 132 Kan. 767, 297 Pac. 1061, that—

"The court, having held that the plaintiff was not entitled to the specific performance asked and having before it all the interested parties and all the evidence pertinent to the transaction out of which the controversy arose, was warranted in proceeding to determine the rights of the parties and to administer equity between them." (Syl. ¶ 4.) (See, also, *Holland v. Holland,* 97 Kan. 169, 155 Pac. 5; Id., 98 Kan. 698, 158 Pac. 1116; 58 C. J. 1230 and 25 R. C. L. 345.)

There is no question as to the jurisdiction and right of the trial court to make an equitable award when the specific contract was not consummated, and there is no hard and fast rule by which the amount thereof can be determined. The amount of the award is largely in the discretion of the trial court under all the evidence in the case, and we see nothing unreasonable or unfair about the amount allowed under the approved theory of the promise to "help him out" by the naming of $1,250 for that purpose. It was held in the Haston case, *supra:*

"In an action for specific performance the granting of that relief rests largely in the sound judicial discretion of the court, and it will not enforce a contract where there is mistake, fraud, unfairness, nor where under the facts and circumstances it would be unreasonable and inequitable to enforce the contract." (Syl. ¶ 3.)

We find no abuse of discretion in the amount of the award, which is sustained by the evidence in general, and no error in overruling the motion for a new trial.

The judgment is affirmed.