No. 34,383

In the Matter of the Estate of C. S. Hutchison, Deceased. FLORENCE J. MARKLEY, *Claimant,* OZETA A. HUTCHISON, Special Administratrix, etc., *Appellees* and *Cross-appellants,* v. LEMA V. FLOOK, DORTHEA PRATHER, OLIVER L. HUTCHISON and E. A. HUTCHISON, *Appellants.*

(99 P. 2d 992)

Opinion filed March 9, 1940.

*O. L. O'Brien, Walter L. McVey,* both of Independence, *H. W. Goodwin* and *W. H. Schwinn,* both of Wellington, for the appellants.

*W. L. Cunningham, D. Arthur Walker* and *Wm. E. Cunningham,* all of Arkansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment of the district court which modified a judgment of the probate court of Sumner county allowing a claim against the estate of the late Mrs. Cynthia S. Hutchison filed by her daughter, Mrs. Florence J. Markley, for care and services performed under contract with her mother and in her behalf for some two years immediately prior to the mother's death.

The material facts were these:

Mrs. Hutchison owned two small farms in McPherson county, on one of which she resided for many years. When she grew old she acquired a residence in Canton and took up her abode there. She

was the mother of four sons and four daughters. One of the sons had died and was survived by his daughter, Dorthea Prather. All these persons had attained their majority prior to the mother's death. One son, Horace, lived in Missouri; another son, Edwin, in Oklahoma; a third son, Oliver, resided on a farm near Canton. Dorthea, the granddaughter, resided in Texas. Of Mrs. Hutchison's daughters, Ozeta was a schoolteacher in Wichita; another daughter, Mrs. Maude Rich, had been a teacher prior to her marriage, and on the death of her husband had resumed her profession. A third daughter, Mrs. Lema V. Flook, resided with her husband and five daughters in Canton. The plaintiff, Mrs. Florence Markley, resided with her husband and two children at Riverdale, in Sumner county, some seventy-five miles from Canton.

Early in 1932, when the mother was about seventy-two years old, her health began to fail. She desired her daughter Florence and her husband to move to Canton so that Florence could look after her. Florence was the practical nurse of the family, the one depended on in times of family sickness. The mother's first proposal was:

"Florence, I have been wondering if you and Clair would come up to live so you could take care of me. I don't want Maude to give up her school, and I don't want Ozeta to lose out in Wichita. If you will come I will see that you are well paid; I will give you the two farms if you will stay as long as I need you and help take care of me."

Florence, the plaintiff herein, agreed to do so if her husband could get employment. He was a filling station attendant. He tried unsuccessfully to get employment about Canton, so the mother's first proposal was not carried out. It seems, however, to have been modified so that for the same consideration the mother would be satisfied if Florence would come whenever she was needed; and that arrangement was carried out for a year or two. Florence made many week-end journeys between her home and her mother's home in Canton and rendered her needful services.

On one occasion the mother, accompanied by two of her daughters, Ozeta and Maude, went to McPherson for the purpose of executing deeds of the promised lands to Florence. A notary prepared the deeds and gave them to Ozeta with instructions to take them home and insert the land descriptions in them. Ozeta testified:

"We . . . went home and I put the deeds in the top drawer of my dresser and that was all."

Sometime in 1934 the mother's health had failed so much that she disliked being left alone, and proposed to go home with Florence.

Ozeta and Maude advised against that because Florence's home was not modern, and that their mother should wait until spring. One of the mother's ailments required the use of a pessary with frequent changes, adjustments and sterilizations; and Florence's attendance and services had become increasingly necessary. About Christmas time in 1934 the mother and Florence had a conversation in the presence of Ozeta and Maude. The mother said:

"Florence, you take such good care of me, I wish you would take me home with you, [the] income off my place isn't hardly enough to pay the expenses, but you can have all of that, and I should get some money from the Nebraska estate and maybe that will help, and remember both of the farms are yours when I am through with them. . . . Remember you will have a big job because my father lived a long time and suffered a lot with cancer, and if this should prove to be a cancer, I will need you a long time."

Florence said: "All right, whatever you say goes, I will come whenever you want me or when Ozeta calls me."

Early in January, 1935, the mother was taken to a doctor's office. The three sons and three of the daughters, Ozeta, Lema and Florence, were at the doctor's office. These members of the family consulted about where their mother should live, but came to no decision. The doctor said she must have good treatment. In response to their inquiry as to what it would cost for her to stay in the hospital Doctor Grover said, "It won't be less than $20 a day." The mother said: "I don't know where I can get that much now. . . . I would rather pay Florence than anyone I know." The doctor said: "If she wants to go it is all right to take her." Thereupon Florence took the mother to her home in Sumner county and cared for her thereafter pursuant to the mother's offer to give her the two farms together with whatever income they might yield over taxes and interest on a mortgage. In the course of the next two years Florence and her husband and their two children made considerable alteration in living arrangements to make the mother comfortable. They first rented a better house and later bought a more comfortable home on her account. As time passed, the mother's need for attention became more urgent and exacting. Florence faithfully gave her the needed care until the mother's death on January 24, 1937, at the age of seventy-seven years.

Mrs. Hutchison left a will executed in 1929, in which she named Ozeta executrix without bond. Ozeta declined to serve in that capacity, but accepted appointment as special administratrix; and on

December 23, 1937, Florence filed her verified account against the estate as follows:

"In the Probate Court of Sumner County, Kansas
"Estate of C. S. Hutchison, deceased
    "To Florence J. Markley, Dr.
  "To nursing, care, medical supplies, medical attendance, and·laundry, for period from Jan. 5, 1935, to Jan. 24, 1937, at $20 per day, $14,980."

On January 8, 1938, the probate court held a hearing on this claim. The special administratrix appeared in person and by attorney. All the heirs except Dorthea Prather likewise appeared. When the claimant had presented her evidence, all the heirs present, including Ozeta, took time to consult, after which the probate court record recites:

"And on the same day, the claimant and said heirs, including the said Ozeta A. Hutchison, return to the court and announce to the court that they have agreed among themselves on an allowance of said claim, and that by agreement of said heirs that said claim may be allowed by the court in the total sum of $14,980, and that payment thereof will be made by the heirs of said estate by the conveyance of certain real estate belonging to said estate to the aforesaid claimant, Florence J. Markley. To all of which the said claimant in open court consents and agrees."

The probate court allowed the claim, classifying it as one of the second class. An appeal was taken by two of the heirs, Oliver and Lema, although they had assented to the allowance of the claim in the probate court, as shown above. The granddaughter, Dorthea, who had not appeared' personally in the probate court and had not joined in the family's consent to the allowance of the claim, likewise appealed—unless her Uncle Edwin was authorized to speak for her, which is suggested in the record but not decided.

Council for claimant filed motions to dismiss the appeal of Oliver and Lema on the ground that they had entered their appearances in the probate court and that they had "consented and agreed to the order and judgment" allowing the claim; and that

"The order and judgment allowing said claim was based on an agreement, compromise, and settlement in which the said Oliver L. Hutchison (and Lema V. Flook) was a party."

These motions were overruled, and on September 12, 1938, the appellee filed an amended claim in which she stated the facts narrated above· at length and in detail; also the facts of the hearing in the probate court; the participation of all the heirs except Dorthea Prather in that hearing, and that Dorthea was represented thereat by Edwin A. Hutchison.

Counsel for appellants moved to strike from the amended claim all its recitals which pertained to the agreement of the heirs in probate court on the ground—

"The said matters are not a proper part of the record in the trial of this matter and to allow them to remain would only allow prejudicial matters to go before the jury and would result in the trial of collateral issues herein, and for the further reason that the record itself shows that the appellant, Dorthea Prather, was not a party to the alleged settlement or compromise."

This motion was sustained. The cause was then tried at length before a jury, which returned a general verdict for the claimant for $1,745, and answered special questions, some of which read:

"1. Did Mrs. C. S. Hutchison, in the month of April, 1932, make an oral agreement with the claimant, Florence J. Markley, that if Florence J. Markley would come to the residence of Mrs. C. S. Hutchison in Canton, Kan., whenever she, Florence J. Markley, was so requested by said Mrs. C. S. Hutchison, and take care of the said Mrs. C. S. Hutchison, and would continue to do so from time to time as and when requested, so long as Mrs. C. S. Hutchison lived, then in payment for said services, the said Mrs. C. S. Hutchison would will or deed to Florence J. Markley, the two tracts of farm land in McPherson county: [70 acres, and 80 acres described]? A. Yes.

"2. If you answer question No. 1 'Yes,' then did Mrs. C. S. Hutchison thereafter make any other agreement with the said Florence J. Markley? A. Yes.

"3. Did Mrs. C. S. Hutchison, in the fall of 1934, make an oral agreement with the claimant, Florence J. Markley, that if Florence J. Markley would take Mrs. C. S. Hutchison to her home and there keep her and take care of her so long as she, the said Mrs. C. S. Hutchison, lived, then all the income and money which the said Mrs. C. S. Hutchison had, or would thereafter receive by inheritance or otherwise, should belong to Florence J. Markley and could be used by her in part payment of the expense of taking care of Mrs. C. S. Hutchison after paying any unpaid taxes and mortgages on the real estate of Mrs. C. S. Hutchison, and could be used by Florence J. Markley to pay medicine bills, doctor bills and necessary bills to be paid for maintenance and support, and that at the death of Mrs. C. S. Hutchison this money and all her property, except the house in Canton, Kan., and the furniture therein, should belong to the claimant in payment of her said services and expenses? A. Yes.

"4. Did Mrs. C. S. Hutchison, shortly after she had seen Doctor Grove at Newton, Kan., in January, 1935, orally agree with the claimant, Florence J. Markley, that for the services of Florence J. Markley in taking care of Mrs. C. S. Hutchison, at the home of Florence J. Markley, so long as she, Mrs. C. S. Hutchison, should live, Florence J. Markley should have as payment therefor the sum of $20 per day? A. No.

"6. . . . State what all of said services so rendered were worth per day. A. $5 per day.

"7. What were the two tracts of farm land mentioned and described in question No. 1 fairly and reasonably worth at the time of the death of Mrs. C. S. Hutchison? A. $9,500.

"8. Do you find from the evidence that it was the intention of the decedent that Mrs. Florence J. Markley should have some compensation for her services in caring for her mother? A. Yes.

"9. Do you find that there was a contractual relationship between the deceased and Florence Markley and that, because of this fact, the claimant, Florence Markley, is entitled to receive the fair and reasonable value of her services in caring for her mother, less the income received by her from the property of her mother after the payment of taxes, interest, expenses and upon the mortgage? A. Yes."

Claimant moved to set aside certain special findings and for judgment on certain others notwithstanding the general verdict. This motion was overruled except "that part of [claimant's] motion asking that the answer to special question No. 9 be set aside," which was sustained. Claimant's motion for judgment in the sum of $9,500 on the other special findings, *non obstante,* was sustained, and judgment rendered accordingly.

Hence this appeal.

The principal error assigned relates to the setting aside of the jury's special finding No. 9, and rendering judgment *non obstante* for $9,500.

A careful reading of the entire record, however, makes it clear that when the jury gave an affirmative answer to special question No. 3, which embodied the gist of this lawsuit, any further inquiry as to the contractual relationship between mother and daughter was superfluous. And since the jury found that mother and daughter had settled the *quid pro quo* for the care and keep of the mother, "so long as she, the said Mrs. C. S. Hutchison, lived," any inquiry or finding touching the fair and reasonable value of claimant's services was beside the point. If the mother had lived twenty years instead of two, the claimant would have had scant pay for her services indeed. That it turned out otherwise is no reason why claimant should be denied the equivalent in money for the consideration she was to receive under her contract with her mother. If the jury had disbelieved the evidence which tended to support the appellees' amended claim and had given a negative answer to special question No. 3, then the jury's special findings numbers 5 and 9, and perhaps others, would have been important and controlling. The trial court's instructions to the jury on this controverted issue were perfectly clear. Those pertinent read:

"IX. If you ; . . do find that the agreement was that Florence J. Markley was to take Mrs. Hutchison to the Markley home and there take care of her, nurse her, furnish her medical supplies and attention in substance as claimed by Mrs. Markley to have been made in the fall of 1934, and as claimed to have been reaffirmed during the Christmas holidays of 1934 as set forth in the statement of plaintiff's claim, and you further find that Florence J. Markley performed and carried out her part of said agreement, then your verdict should be for the claimant in an amount equal to a reasonable value of the two tracts of land which by stipulation of the parties made in open court was between $9,000 and $10,000 and you will fix such reasonable value of said farms at some specific sum which you feel warranted by the evidence and not less than $9,000 nor more than $10,000.

"XI. If you fail to find that any of the above agreements were made, but do find that there was an oral understanding and agreement between Mrs. C. S. Hutchison and Florence J. Markley that Florence J. Markley was to be paid for her services in taking care of Mrs. Hutchison, then your verdict should be in favor of Florence J. Markley for such sum as you find from the evidence her services to have been reasonably worth, their fair value at the time and place of performance, deducting from said sum such payments as the evidence shows and as you shall find that Florence J. Markley, the claimant, received from Mrs. Hutchison during her lifetime and during the period covered by said services."

Summarizing these two instructions, the jury were told that if the contract alleged were proved, the jury should render a verdict in claimant's behalf for the money equivalent of the reasonable value of the lands she was to receive and did not get. But if the contract alleged was not established by the evidence, but some other contract for reasonable compensation for claimant's services was found to exist, the jury should find accordingly. No error in the court's ruling on the point complained of is made to appear. And since the jury found that the value of the two tracts of land claimant was to receive was $9,500, it was proper for the court to render judgment for that amount. Indeed, since this appeal was tried before the new probate code of 1939 took effect, there was no other judgment the district court, sitting merely as an appellate probate court, could have rendered. (*Ross v. Woollard*, 75 Kan. 383, 89 Pac. 680; *In re Estate of Dennis*, 146 Kan. 121, 124, 68 P. 2d 1083; *In re Estate of Brown*, 147 Kan. 395, 398, 76 P. 2d 857.) But see the new code (G. S. 1939 Supp. 59-2408).

It is next contended that the trial court erred in admitting evidence and rendering judgment upon a contract upon which no claim was filed and exhibited within the statutory period. We think not. Throughout these proceedings in the probate court and in the dis-

trict court the appellee's claim was for monetary compensation for services. The amended claim in the district court was not a departure, but merely an elaboration of the claim she had filed in the probate court. True, it was for $20 per day, and the evidence did not satisfy the triers of fact that she was to receive $20 per day. However, it seems rather obvious that her claim for $20 per day was based upon a computation of the length of time Florence served her mother and the monetary value she placed upon the land she was to receive for those services but which she did not get. If it was proper for appellee to present any claim at all to the probate court for allowance, it had to be one for money. That court could not have allowed her claim to be paid for in acres of land, even if the one absentee heir, Dorthea Prather, had been present and had joined and assented, as did all the other heirs, that the claim should be thus allowed, and notwithstanding the well-known readiness with which this court gives approval to family settlements.

An argument could be made that claimant made a mistake when she presented any claim in the probate court, that she should have ignored the probate court entirely and should have filed an independent lawsuit in the district court for specific performance, the sort of lawsuit to which this court occasionally does give countenance, but only where a monetary judgment will be inadequate or fruitless, or where to refuse specific performance would cause justice to miscarry. (*Rooney v. McDermott*, 113 Kan. 18, 213 Pac. 631; Id. 121 Kan. 93, 246 Pac. 183 and citations; *Trackwell v. Walker*, 142 Kan. 367, 46 P. 2d 603; *McEnulty v. McEnulty*, 146 Kan. 198, 69 P. 2d 1105; *Dent v. Morton*, 148 Kan. 97, 79 P. 2d 875; *Imthurn v. Martin*, 150 Kan. 906, 96 P. 2d 860.) But that point, if sound, was not raised in the trial court nor in this court, so we need give it no present concern. This court cannot lay it down as a rule of law that when special services performed under contract for an aged person are to be paid for in land, and that promise is not kept by the promisor, it is a fatal error for the unrequited person to present for compensation in the probate court the only sort of claim that court would have jurisdiction to entertain. So long as the probate court has no difficulty in ascertaining the truth, and the district court likewise on appeal, this court usually has no difficulty in determining whether error inheres in the record of sufficient gravity to compel a reversal of the judgment.

It is next argued that if the trial court found the answers to the

special questions irreconcilable with the general verdict it should have granted a new trial. Not so, however. It was not merely because of some inconsistency between special finding No. 9 and No. 3 that the trial court set it aside, but because No. 9 was quite superfluous and unimportant when No. 3 was answered affirmatively.

The next complaint is based on the trial court's refusal to give instructions to the effect that if the mother was afflicted with mental incapacity when she made the second contract with claimant (the one made in the fall of 1934 and reaffirmed at Christmas time the same year) it would be unenforceable. We think that point was adequately covered in instruction No. 7 given by the court. Moreover, it is difficult to discern substantial testimony in the record to warrant any instruction on the subject. Indeed, the appellants do not claim the mother was under such mental infirmity that she could not make a contract. They argue that she *did* make a contract— one in which plaintiff was to be paid a reasonable per diem for her services to her mother. In concluding their main brief appellants do not ask that the trial court's judgment be set aside *in toto*, but that judgment for $1,745 should be ordered in claimant's behalf.

In their reply brief counsel for appellants argue that the trial court should have assumed that by their special finding No. 9 the jury intended to find that the contract referred to in special finding No. 3 had been superseded by some later agreement. There was no evidence of some later agreement.

Counsel for appellant make gratuitous use of some hard words touching appellee's claim—that it was "unfair and oppressive," and "one that should not be enforced." Two brothers and two sisters of the claimant who are out-of-pocket if this judgment is affirmed took no such attitude in the probate court nor in the district court. Even the testimony of the brother and sister who are appellants herein, given the utmost credence, would not warrant such a characterization of their sister's claim in this case.

As there is no contention that the granddaughter was estopped to appeal, we deem it immaterial whether the other two appellants were estopped or not, so the cross-appeal needs no attention.

There is no material error in the record and the judgment is affirmed.

THIELE, J. (dissenting): I cannot agree to the disposition made of the above appeal, and, briefly stated, my reasons are as follows:

The claim originally filed in the probate court must be construed

to be one that that court could entertain. The claim could be construed either as one on an express contract for services where the agreed price was $20 per day or an express contract for services to be paid for at what they were worth, that worth being alleged to be $20 per day, but under no circumstances could the claim be construed as one for specific performance of a contract whereby lands were to be given for services performed.

When the appeal was taken to the district court, the issue to be tried there was the same as in the probate court. In the district court the claimant filed an amended claim covering not only the original claim but alleging a contract whereby she was to get definitely described real estate as consideration for services performed and to be performed and a supplement to that contract whereby she was to get certain income, etc., from the real estate prior to her mother's death. On the trial appellants repeatedly objected to evidence of those later contracts for the reason, among others, that they were not a part of the original claim and no claim had been made on them until they were barred by the statute of limitations.

Appellees attempt to justify by contending that proof of change in the form of the consideration to be paid does not change the claim, citing in support *Darnell v. Haines,* 119 Kan. 633, 240 Pac. 582. That case is no authority for permitting what was done here. In that case the claim originally filed in the probate court was heard and denied, an appeal taken, and the matter then dismissed without prejudice. Later an action was brought in the district court, which had full jurisdiction over actions involving real estate. In that action it was held there could be recovery for services rendered and judgment for a sum measured by the value of lands, and that the claimant was privileged to elect between recovery of the value of her services and recovery of value of the lands. There the court had a full jurisdiction in an orginal action; here it had only a limited jurisdiction on appeal. But that is not what was done here. Claimant instituted an action in the probate court for a money judgment on a contract calling for the payment of a definite sum. And as to that contract, on the appeal the jury refused to find there was a contract for that definite sum, but found that claimant's services were worth $5 per day, or a total of $1,745, and its general verdict was for that amount. In my opinion that was all that was properly submitted to the jury and that verdict should stand.

It may be said that assuming there had been timely allegation

of the contract whereby in consideration of her performance of serv- ices claimant was to receive specified real estate, there was proof to sustain it, and the jury so found. That contract was for land and any action to recover it had to be instituted in the district court. That contract was not pleaded nor relied upon until after the time had expired in which claims against the estate could be proved. That contention was appropriately raised in the trial court and is presented on appeal in this court. The contention was good and should have been sustained.

I am authorized to say that Mr. Justice HARVEY and Mr. Justice WEDELL join in the foregoing dissenting opinion.