No. 21,714.

A. J. BRENN, *Appellee*, v. THE FARMERS ALLIANCE INSURANCE COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. MUTUAL FIRE INSURANCE—*On Live Stock—Construction of Policy—Risk on Each Animal Separately.* A by-law of a mutual fire insurance company is held to mean that where a policy is written on live stock, and the risk on each head is not otherwise stated, each is to be regarded as separately insured for a numerically proportional part of the entire amount named.

2. SAME—*Oral Agreement Contradicting Contract Inadmissible.* The rule which denies effect to an oral agreement so far as it contradicts a written contract entered into at the same time or later, is one not merely of evidence, but of substantive law.

3. SAME—*Mistaken Opinion of Soliciting Agent—Not a Basis for Reformation of Policy.* Where the statute provides that the by-laws of a mutual insurance company shall be made a part of every policy issued, the fact that the agent who solicited the insurance made an incorrect statement concerning the force of a by-law, through a mistaken opinion as to its meaning, will not form a basis for a reformation of the contract to conform to such erroneous conception.

4. SAME—*Effect of Change in By-law.* A change in such by-law, by the elimination of a provision that in no event should the company's liability exceed the market value of the animal lost, is held not to have had any effect upon the rights of the parties involved in this action.

Appeal from Stafford district court; DANIEL A. BANTA, judge. Opinion filed October 12, 1918. Reversed.

*S. H. Allen, Otis S. Allen,* and *George S. Allen,* all of Topeka, for the appellant.

*Robert Garvin,* of St. John, for the appellee.

The opinion of the court was delivered by

BURCH, J.: A. J. Brenn sued the Farmers Alliance Insurance Company upon a policy covering a number of horses, one of which had been killed by lightning, one of the risks insured against. The controversy was as to the amount of recovery, the plaintiff claiming $130, and the defendant conceding but $27.77. The case was heard upon an agreed statement of facts, the trial court sustaining the plaintiff's claim and rendering judgment accordingly. The defendant appeals.

The policy was for $500, and covered horses, mules, and colts owned by the plaintiff. No separate valuation was placed on any animal. The plaintiff had eleven head when the insurance was taken and eighteen when the loss occurred. The defendant is a mutual company, organized under the Kansas statute (Gen. Stat. 1915, §§ 5300-5339); and one of its by-laws, reading as follows, was made a part of the contract:

"It is agreed and made a part of this contract of insurance that each head of live stock covered thereby is a separate and distinct risk and the company shall not be liable for a greater sum per head than placed thereon in the application; and such sum is to be an average price of all stock owned of the class named. Provided that, if at any time the herd is increased this policy shall reach to and cover such increase, but the amount of insurance per head shall be diminished in proportion to the increase in number, and, if the herd is diminished, the amount of insurance per head shall be proportionately increased; but such increase shall not create a liability upon the part of the company for a greater sum per head than double the price named in the application, and in no case shall the company be liable for more than the market value of the animal when and where killed, when no price is named in the application."

The parties disagree in the interpretation of this language. We think it quite clear that the by-law means, as contended by the defendant, that where the amount of risk on each animal is not otherwise stated, each is to be regarded as insured separately for the proportion of the entire amount named that one bears to the number of head covered by the policy at the time of a loss, not to be more, however, than twice what this amount would have been had a loss occurred before any change took place in the size of the herd, nor more than the market value of the animal lost. So interpreted, the by-law means, as applied to the facts of this case, that each animal at the time the policy

was written was insured for 1-11 of $500, or $45.45. When the number of animals was increased to eighteen, the risk upon each was reduced to 1-18 of $500, or $27.77. If the number of horses had been reduced to five, the recovery would not have been $100, but $90.90 (if the animal lost was worth that much), because it could not be more than twice the original risk of $45.45. If after the herd had been reduced to five an animal had been lost which was worth but $50, that would have been the limit of recovery.

It was agreed, however, (subject to objection as to competency and materiality) that the soliciting agent who induced the plaintiff to apply for the insurance orally represented to him before it was written that the company would pay the full value of any loss, where no value was stated in the application, and that if he applied for $500 insurance and received it the company would pay the full value of any animal lost, notwithstanding the herd might in the meantime have been increased. The plaintiff contends that by reason of these representations he was entitled to recover the full value of the animal lost, even conceding the correctness of the interpretation we have just placed upon the language of the by-law. If the representations referred to are regarded as a part of the negotiations leading up to the written contract entered into, they cannot have the effect of modifying its terms, under the familiar rule. The plaintiff, however, suggests that the objection made was one to the admission of evidence, and, having been overruled by the trial court, is now unavailing because of the absence of a motion for a new trial. The case was heard on an agreed statement of facts, and no such motion was necessary. The defendant did not merely consent that evidence should be introduced showing that the representations were made; it admitted that to be the fact, subject to its contention that the rights of the parties were not thereby affected. We concur in the modern view of the character of the so-called "parol evidence" rule, namely, that the rule which denies effect to an oral agreement, where it varies a written contract entered into at the same time or earlier, is not merely one of evidence, but of substantive law. The accepted theory is not merely that the writing is the best evidence of the agreement, but that what is embodied in the

writing is the actual final contract of the parties, unless affected by fraud or mutual mistake. Evidence concerning conversations preceding the reduction of an agreement to writing, when offered to contradict the terms of the written contract, is rejected, not because the testimony proffered is not of the right kind by which to show that certain things were said, but because the fact that they were said cannot itself affect the matter in controversy. The authorities bearing on the matter are collected in *Thompson Co. v. Foster*, 101 Kan. 14, 16, 165 Pac. 841.

The petition did not ask for a reformation of the written contract because of a mutual mistake, but, inasmuch as the judgment was in favor of the plaintiff, the trial court may perhaps be regarded as having considered it as reformed, if the evidence was such as to warrant that action. By the weight of authority, an insurance contract may be reformed for a mistake of the applicant and the soliciting agent, although the latter had no authority to issue a policy or determine its contents. (14 R. C. L. 903, citing note, 11 L. R. A., n. s., 357.) Here, however, the facts indicate, not that the company's agent represented that matter was to be inserted in the policy which was omitted, but that, knowing the actual contents of the policy, he undertook to tell its legal effect and stated it incorrectly through an error of judgment. Such a situation has been held not to authorize a reformation on the ground of mutual mistake. (*Travelers' Ins. Co. v. Henderson*, 69 Fed. 762.)

But a consideration which disposes of this feature of the case is the fact that the statute under which the defendant is organized includes this provision:

"Every policy issued shall have attached thereto a printed copy of the note and application, also a printed copy of the by-laws and regulations of the company, which shall be signed by the president and secretary of the company and the insured, and shall become a part of the contract between the insurer and the insured." (Gen. Stat. 1915, § 5319.)

The defendant is a purely mutual company. The persons insured form the membership of the corporation. (Gen. Stat. 1915, § 5310.) The legislative intent clearly was that the by-laws should be made binding on the members and should constitute a part of every contract of insurance made,

and that they should affect the measure of liability where they related to that subject. This purpose is not to be defeated by the expression by a soliciting agent of a mistaken opinion as to the force of a by-law. It is the meaning of the by-law it-self, and not the agent's conception of it, that is to control.

If the plaintiff, before a loss occurred, had brought an action for the rescission of the contract, asking to be released from further liability for the premium, a question of an entirely different character would be presented.

The contention is made that the representations of the agent already stated, and the action of the plaintiff in reliance thereon, amounted to a practical construction of the doubtful language of a contract, which should control. We do not regard the by-law as ambiguous in such sense as to make that principle applicable, nor do we consider the opinion of the agent and the acceptance of the policy by the plaintiff in reliance thereon as amounting to a practical interpretation by the parties.

After the issuance of the policy and before the loss the by-law quoted was amended by striking out the words italicised in the following provision:

"Provided that, if at any time the herd is increased this policy shall reach to and cover such increase, but the amount of insurance per head shall be diminished in proportion to the increase in number, and, if the herd is diminished, the amount of insurance per head shall be proportionately increased; but such increase shall not create a liability upon the part of the company for a greater sum per head than double the price named in the application, *and in no case shall the company be liable for more than the market value of the animal when and where killed, when no price is named in the application.*"

The effect of this change seems to be to remove one of the restrictions placed upon an increase in the risk carried on each animal by a decrease in the number. For instance, in the case already supposed, if the plaintiff's herd had been reduced to five he might (unless some other provision prevented) have recovered 90.90 for the loss of one head, although it was worth on the market only $50. The clause eliminated obviously had special reference to the situation arising where the size of the original herd was reduced, but, in any event, its elimination does not affect the defendant's liability here.

The judgment is reversed and the cause remanded with directions to render judgment in accordance herewith.