Nordboe v. Frye.

---

No. 22,612.

Otto Nordboe, *Appellee,* v. Mary A. Frye et al., *Appellants.*

SYLLABUS BY THE COURT.

1. Oral Contract—*To Leave Property to Plaintiff—No Material Variance Between Petition and Evidence.* A difference between the date and character of the contract shown by the evidence and that pleaded is held not to require a reversal, because it does not appear that any prejudice resulted.

2. Same—*Contract Performed by Plaintiff—Evidence.* The evidence is held sufficient to justify findings that when the plaintiff was 14 years of age a contract was made between him and his mother on the one hand and the decedent whose estate is in controversy on the other, that at the death of the latter the plaintiff was to have all the prop-

erty he left, in consideration of remaining with him and working for him until the plaintiff should come of age, and that the plaintiff had carried out the agreement on his part.

3. SAME—*Contract Not Inequitable—Not Within Statute of Frauds.* It is held that enforcement of the contract referred to should not be refused either on the ground of inequity or because of the statute of frauds.

Appeal from Lincoln district court; DALLAS GROVER, judge. Opinion filed July 10, 1920. Affirmed.

*E. A. McFarland,* of Lincoln, *C. W. Burch, B. I. Litowich,* and *La Rue Royce,* all of Salina, for the appellants.

*Z. C. Millikin,* of Salina, for the appellee.

The opinion of the court was delivered by

MASON, J.: Thomas J. Nordboe died in November, 1915, at the age of 86, leaving a will executed a few days before his death devising real estate to a sister-in-law and her two daughters. Otto Nordboe (that being the name by which he was generally known, although his real name was Otto Cushman) brought action against these devisees, claiming a right to the land by virtue of a promise that he should have it, made to himself and his mother by Thomas J. Nordboe, in consideration of agreements that had been performed on their part. The plaintiff recovered, and the defendants appeal.

The court made special findings, the more material of which may be thus summarized: In 1884 the plaintiff, then seven years of age, and his younger brother Julius were taken into the home of Thomas J. Nordboe and his wife, to be reared by them. At this time Nordboe's eyesight had begun to fail, and three years later he became totally blind. Mrs. Nordboe died in January, 1891, and Julius six months later. The plaintiff continued to live with Nordboe, doing such work as was customary for boys of his age, assisting Nordboe in going about the premises and acting as his companion when he left home. In the latter part of 1891 the plaintiff's mother asked Nordboe to permit him to return to her home to be of assistance to her. He was unwilling to do so, saying that he was old and blind and in need of his services, and that if the boy was permitted to remain with him and serve him and work for him until of age

he would at his death leave him all the property he might then own. An agreement was then made between Nordboe and the plaintiff and his mother that the plaintiff should remain with Nordboe and faithfully serve him and perform such work and services as a child would be expected to perform for a parent, until he should attain his majority, and that Nordboe in consideration thereof should leave him all the property he owned at the time of his death. Under this agreement the plaintiff was permitted to remain with Nordboe and did so, faithfully performing his part—serving him until he reached the age of twenty-seven.

The defendants ask a reversal on two grounds: that these findings do not support the allegations of the petition, and that they are not sustained by the evidence.

1. The amended petition, upon which the case was tried, alleged that a contract substantially like that set out in the findings, but including an agreement on the part of Nordboe to adopt the plaintiff, was made in 1884, just before the plaintiff entered the Nordboe home. The defendants argue that proof of a contract made in 1891 created a variance of such importance as to require a reversal, because a contract made in 1884 would have been in part for the benefit of Julius, and would not by his death have inured to the sole benefit of the plaintiff.

In addition to the averment already referred to, the petition alleged that Nordboe, after the plaintiff had entered his home, from time to time repeated and reiterated his promise and agreement. This language might perhaps, by a liberal construction, be so interpreted as to allow proof of a new contract to be made under it. We do not rest the case on that theory, however. We hold that, although the contract found to have been made was of a somewhat different character from that pleaded, because the relations of the parties were different in 1891 from what they had been in 1884, there is no such showing or presumption of prejudice as to require a setting aside of the judgment. (Civ. Code, § 134, Gen. Stat. 1915, § 7026.) It does not appear that the defendants would have been better enabled to meet the evidence produced by the plaintiff if the petition had more clearly indicated its scope, or that upon another trial any more light could be thrown upon the matter.

2. The evidence concerning the transaction that took place in 1884 tends to show that it was then agreed that the boys were to live with Nordboe as his children, but that he then made no promise with reference to his property. There was, however, evidence of such a promise made in 1891. The plaintiff gave this testimony concerning a conversation between his mother and Nordboe after the death of Julius:

"My mother wanted to have him release me and come back. He said no, he had promised to do—if I would stay with him until I was—take care of him, at the end of his death I was to have the property that was left. That is the substance of the conversation. I can't repeat it word for word.

"Q. Stay with him how long? A. Until I was a young man."

He also testified that he remained with Nordboe, who was totally and permanently blind, working for him—having so much to do that he could only attend school a part of the time; that he was there about 19 years, leaving in 1905, after talking about it with Nordboe, who made no objection.

Another witness gave this testimony concerning a conversation with Nordboe after the death of Julius:

"Well, he said—he told me whenever he dies all that which belongs to him Otto was going to have for his work in taking care of him. Always what is left over after his death that falls to Otto."

Another witness testifying to a talk with Nordboe in October, 1915, said:

"I asked Uncle Tom if he had given Thanke his property after he was through with it. He spoke up quick: 'No, no,' he said, 'after I am through with it it goes to Ott. That is what it belongs, and that is the contract, or agreement.' He didn't say contract, 'That is the agreement.' "

There was other testimony of the same character. Some of it was open to a different interpretation, but taken altogether we regard the evidence as sufficient to justify the conclusion that the contract described in the findings of the court had been made, and that the plaintiff had performed his part of it.

3. It is urged that the contract should not be enforced even if it is established that it was entered into and upon one side performed, because it was inequitable and because of the statute of frauds. The character of the services required, particularly in view of the decedent's total blindness, was such as in our judgment to relieve the contract from any imputation of

inequity and to take the case out of the statute of frauds, if it would otherwise be applicable, which may well be doubted (*Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; *Stahl v. Stevenson,* 102 Kan. 447, 171 Pac. 1164), on the ground that the amount of reasonable compensation in money could not be satisfactorily determined. (*Schoonover v. Schoonover,* 86 Kan. 487, 121 Pac. 485; 5 Pomeroy's Equity Jurisprudence, § 2248, pp. 5024-5025.)

The judgment is affirmed.