No. 29,378.

ALFRED BROWN, *Appellee*, v. SOPHIA SLUSSER, *Appellant*.

(288 Pac. 743.)

Opinion filed June 7, 1930.

*James M. Meek*, of Kansas City, for the appellant.
*Justus N. Baird*, of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: The appeal in this case is from the order of the trial court in an ejectment action discharging the jury and holding there was insufficient evidence to sustain an alleged oral contract giving an equitable title in certain real property.

The plaintiff held legal title as devisee of the record owner of the property involved, which was a lot in Kansas City with a dwelling thereon. The defendant admitted in her answer the possession alleged in her, and by way of cross petition alleged an oral contract with the deceased record owner, who was a cousin of the defendant and an old soldier, inmate of the soldiers' home at Leavenworth, whereby he was to assist this defendant in paying off the indebtedness and purchasing this real property occupied by her since

1877 and lost by foreclosure of a mortgage thereon, and was to have a room in the house for himself and live with the defendant, and she was to pay the taxes on the property, keep it in repair, board him when there, and do all the washing, ironing and repairing of his clothing, and when the indebtedness was fully paid then the defendant should have and own the property in her own right. She further alleged that all the payments have been made and that she has performed all the conditions on her part to be performed, and that he lived there and made his home with her from 1916 until his death in April, 1927. She therefore prayed that the plaintiff take nothing, but that her title be quieted against the claims of the plaintiff.

A jury was called and the defendant assumed the burden of proof.

The evidence showed that the defendant and her brother inherited this property from their mother, and in 1911 executed a warranty deed to secure a loan thereon, taking back a contract for repurchase. This deed was foreclosed as a mortgage, and sheriff's deed issued to mortgagees in 1914. After this she continued to occupy the property as a tenant at $12 per month rent.

It further shows that in 1916 Oliver Brown, her cousin, the old soldier, started making his home with her. The front room in the house was set apart for his use and from that time until his death he spent part of his time in her home and part at the soldiers' home, going back and forth two or three times a month. In 1922 a deed was executed conveying this property to Oliver Brown, he having purchased it some time before, but the payment of balance was made in subsequent installments. He was assisted to some extent in making these payments by the defendant, but it is not shown in what amount. There seems to be no question about Oliver Brown continuing to occupy the room in the house and to board and live with the defendant until his death, and that defendant cared for his room, cooked, washed, ironed and mended for him during that time.

A number of neighbor women testified that Oliver Brown had told them he was going to help Sophia, the defendant, pay off the debt or redeem the property and wanted her to have it as a home as long as she lived.

An attorney testified to having written three wills for Oliver Brown during the time he lived with defendant, the last one devising this property to his brother, the plaintiff; and the first one gave a life

estate in the property to the defendant. After the writing of the first will there arose serious differences between Brown and the husband of the defendant which led them to have each other arrested occasionally, and finally Brown brought an action of detainer as to this property against the defendant, which was decided in his favor, but a new trial was granted and the case stood in this condition at the time of Brown's death, and was not revived.

The trial court, after hearing all the evidence in the case at bar, held that the oral contract giving defendant an equitable title in the property was not sustained by the evidence, and took the case from the jury and rendered judgment for plaintiff in ejectment.

If in the judgment of the court the evidence did not sustain the defense, it was perfectly proper to take the case from the jury because there was no further issue involved except the equitable title, the sufficiency of the evidence in support of which is purely a matter for the consideration of the court, but the appellant insists that the evidence of the neighbor women, the attorney and some others along the same line, was amply sufficient to establish the existence of the oral contract, citing *Baldwin v. Baldwin,* 73 Kan. 39, 84 Pac. 568; *Heery v. Reed,* 80 Kan. 380, 102 Pac. 846; *Bateman v. Franklin,* 114 Kan. 183, 217 Pac. 318, and other cases. In the first case cited one of the two features mentioned by the court in favor of the performance of an oral contract was the entry into possession, which is not an element in the case at bar, for the defendant was in possession long before the time the contract was claimed to have been made. In the second case cited the evidence is not summarized, but the court found "there was testimony of an express agreement to pay for the services rendered." In the third case cited above an objection to the introduction of evidence was sustained and, as far as the oral contract is concerned, we have only the allegations of the petition and none of the testimony. In reversing the ruling and sending the case back for a trial on the issues, the court said with reference to matters of this character:

"Of course, this is the sort of case where the triers of the facts, and especially the trial judge, must be alert to see that estates are not plundered through the false and fraudulent claims, and where there must be careful and conscientious sifting of the evidence. But such claims may be *bona fide,* and when they are such and are established by clear and convincing evidence they are perfectly legitimate and must be respected and enforced." (p. 185.)

The difficulty in this case, as we see it, is the utter lack of evidence tending to prove the making of a contract. All the evidence

of the neighbor women and the attorney at most is corroborative of such contract, but there is no evidence giving the facts constituting the contract, as alleged in the cross petition, which is absolutely necessary.

In the case of *Nash v. Harrington*, 110 Kan. 636, 205 Pac. 354, which was just like this one concerning such evidence, it was said:

"In the cases where oral contracts for the conveyance of land have been upheld by this court, it will be found that there was evidence tending to prove the primary facts constituting the contract. Once some such evidence was forthcoming, then such testimony as that of the witnesses Casey and Kleinneger, quoted above, would perform the valuable function of reinforcement or corroboration, by showing that the evidence to support the main proposition was true. But the testimony of Casey and Kleinneger (and the other testimony to the same effect) is corroborative of what? Nothing, because of an utter want of the matter of prime importance—some evidence that Johanna and her father made the contract relied on. The evidence to prove the contract need not be direct, but it must, in sum, be established by clear and satisfactory proof." (p. 643.)

In the case of *Pantel v. Bower*, 104 Kan. 18, 178 Pac. 241, very similar to this one in allegations, proof and ruling, it was said:

"The rule adhered to in cases of this general character is, that there must be facts and circumstances sufficient to raise a convincing implication that the contract was made, and to satisfy the court of its terms; and there must be no inequity in its enforcement." (p. 22.)

The very recent decision in the case of *Rayl v. Central Trust Co.*, 127 Kan. 131, 272 Pac. 147, exactly applies to the situation in the case at bar. There the husband promised his dying wife he would purchase the outstanding interests in her farm and convey it to their son, Thomas, after her death. He did purchase all the interests and procured a complete title to the land, then told his daughter to tell Thomas he was going to give the farm to him and later sent another message to him by his daughter about putting improvements on the farm. He told neighbors that the farm belonged to his son, and signed a war affidavit that his son owned the farm, and told a number of persons that he had nothing to do with that farm, but there was no evidence whatever of the necessary transaction of either actually giving it to him or promising to give it to him, and the court held:

"In an action involving the title to and ownership of real property, a person who claims to own the land by gift from the deceased record title owner, in addition to evidence of a corroborating nature, must, in order to prove title or ownership, show that the deceased owner had formally given the land to the party claiming to own it as donee." (Syl.)

The same principle and rule is recognized in *Stout v. Hyatt*, 13 Kan. 232; *Hoover v. Hopkins*, 122 Kan. 65, 251 Pac. 411; *Nordboe v. Frye*, 107 Kan. 291, 191 Pac. 282.

We think the trial court was correct in determining there was no evidence of the facts constituting the contract, nor of the making of the contract alleged, and under such circumstances there was no error in taking this case of an equitable nature from the jury and rendering judgment for the plaintiff in ejectment.

The judgment is affirmed.