No. 36,234

In the Matter of the Estate of Fletcher H. Brown, Deceased (ST. FRANCIS HOSPITAL, *Appellant,* v. CENTRAL TRUST COMPANY, as Executor, etc., *Appellee*).

(155 P. 2d 445)

Opinion filed January 27, 1945.

*Marlin S. Casey* and *Randal C. Harvey,* both of Topeka, were on the briefs for the appellant.

*Walter T. Chaney,* of Topeka, was on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This case originated in the probate court by the filing of a claim for allowance against an estate. The claim was based upon a check payable to the St. Francis Association, for $10,000, which had not been cashed during the lifetime of its maker. In probate court a demurrer was sustained to the claimant's evidence and it appealed to the district court, where a similar demurrer to the evidence was again sustained. This appeal is from that ruling.

The real nature of the claim is best disclosed by the pleading filed by the claimant in probate court, on the allegations of which it must, of course, rely for recovery. Material portions thereof read:

"The petitioner, St. Francis Hospital, alleges that it is a charitable hospital, operated in Shawnee County, Kansas, by the Sisters of Charity of Leavenworth, Kansas; that its correct post office address is 1719 West 6th Street, Topeka, Kansas; that the petitioner has a demand against the estate of Fletcher H. Brown, deceased, amounting to the sum of ten thousand dollars ($10,000.00), with interest thereon at the rate of six per cent per annum from the 10th day of May, 1943, which demand is based upon a check drawn by the decedent, Fletcher H. Brown, on May 10, 1943, upon the Central National Bank of Topeka, Kansas, payable to 'Saint Francis Association', which was intended for and is the same organization as the claimant, which check was signed by the decedent, Fletcher H. Brown, and was delivered by him to petitioner on said date; and which check was duly presented for payment within a reasonable time to the Central National Bank at its place of business in Topeka, Kansas, and payment thereof was refused by said bank for the reason that decedent did not have sufficient funds on deposit subject to check at the time the same was presented for payment, and the same is wholly unpaid. A true copy of said check is hereto attached, marked Exhibit A, and made a part of this petition."

Since the questions submitted for appellate review relate only to alleged errors in the rejection of evidence and the sustaining of a demurrer to the evidence on the ground that under all such evidence the check for $10,000 was a gift without consideration and not a proper charge against the estate, allegations of the answer become immaterial and will not be related. It suffices to say they were sufficient to raise an issue of liability on the instrument in question.

Fortunately, in our consideration of the evidence we not only can give force to the rule that all competent evidence must be accepted as true and indulge all reasonable inferences to be drawn therefrom in favor of the party adducing it, but can proceed on the premise, that without regard to what the effect of their testimony might be so far as it affected the ultimate result of the litigation, all witnesses

testified candidly, fairly and frankly with respect to the events and circumstances leading up to the execution and delivery of the check and subsequent acts and conduct of the parties pertaining thereto.

We shall first relate the facts which tend to make up the overall picture of what this lawsuit is about. Subsequently, we will refer to specific testimony which in our opinion is not only indicative of its true nature and character but determinative of its result.

In the spring of 1943 Fletcher H. Brown and Cora M. Brown, his wife, who were well advanced in years, were living in and residents of Topeka. They had no children. On April 16, 1943, Mrs. Brown became ill and was taken to St. Francis hospital and remained there as a patient for about eight weeks. During that time Mr. Brown visited his wife several times a day, and became well acquainted with the Sisters, nurses and employees at the hospital. Early in the morning on May 10, 1943, while Mrs. Brown was still in the hospital, but at a time when all her bills were paid, Mr. Brown came to the hospital and handed Sister Barbara, who was in charge of the office, a check for $10,000, drawn on the Central National Bank and payable to "Saint Francis Association." After some conversation, the check was accepted. On the same day it was endorsed and handed to the bank for deposit. An official of the bank advised the Sisters who presented it for payment that Mr. Brown did not have enough money deposited in the bank at the time to cash the check, but that he had plenty of money and just did not happen to have that amount on deposit at the time. At the suggestion of someone the check was taken back to the hospital and it was never again presented to the bank for payment. Later, Mr. Brown was advised of the attempt to cash the check and that payment had been refused because he did not have enough money on deposit. His reply was that if they would take the check down the following Tuesday he would have enough money deposited to pay it. A few days later Mr. Brown and C. F. Adelman, identified by the bank as the former's business manager, came to the hospital. There Mr. Brown, in the presence of the Sisters, told Mr. Adelman he knew that the check was for $10,000, and that he wanted them to have it. Later Mr. Brown and Mr. Adelman went to the bank for the purpose of taking money from Mr. Brown's safety deposit box and depositing it to the credit of his open account so that the check might be cashed, but because of differences between the two as to who should take the money from the box, which did not have anything to do with a lack of desire to

refrain from taking that action, the box was not opened and the money was never placed in Mr. Brown's checking account. A few weeks later, on June 11, 1943, a guardian was appointed for him and on July 25, 1943, he died, leaving a will which made no provision for payment of the check.

We now direct our attention to the specific portions of the testimony to which we have previously referred. They deal with what was said and done by Mr. Brown at or about the time of the delivery of the check.

Sister Mary Euthalia testified on direct examination in part as follows: The Sister in the office called for her and when she went in Mr. Brown handed her a check and said, "This is for you." That on the occasion that Mr. Brown and Mr. Adelman were at the hospital the latter asked Mr. Brown (referring to the check) if he wanted the Sisters to have this and Mr. Brown said yes.

On cross-examination she stated: Mr. Brown didn't say anything about why he had given them the check nor for what purpose it was given. She was then asked this question "And he was not obligated to St. Francis hospital in any manner at all?" To which she replied, "No, unless he would feel that St. Francis hospital needed the money."

Sister Mary Claudia, the treasurer of the hospital, also testified. Her testimony with respect to the same subject was: She was present during a conversation between Mr. Brown, Mr. Adelman and Sister Euthalia; she brought the check and gave it to Mr. Brown, who then said he wanted us to have the check; when Mr. Adelman asked Mr. Brown if he intended to give the Sisters the check, the latter said, yes he did.

On cross-examination she stated: When Mr. Brown handed the check to Sister Barbara she thought he wanted to pay his wife's bill, and she told him it was paid to date; he said he knew it was, but that wasn't for his wife's bill; he said, "I want to give it to you;" on a later occasion Mr. Brown made the statement he had given us the check in appreciation of what we had done for Mrs. Brown.

Referring to a conversation between Mr. Brown and Sister Euthalia which took place while she and Sister Barbara were present, Sister Claudia made the following statement: Sister Euthalia said to Mr. Brown, "What is this for?" He said, "It is for you." She said, "Do you know that this check is for $10,000?", and he said,

"Yes, I do," and he says, "It is for you," and she said, "What for?", and he said, "To do whatever you want to do with it."

The record also shows that at the request of counsel for respondent it was agreed Sister Claudia be recalled as a witness to testify that in the probate court she was asked the following question: "Was this just a matter of a donation or gift?" to which she answered, "It was a gift."

Mr. Adelman testified on behalf of the claimant regarding the conversation at the hospital. He was asked to state what was said between him and Mr. Brown or between Mr. Brown and any of the parties on that occasion. His reply was: "Well, he said it was just the way he wanted it. I said 'You want to give the Sisters a check for $10,000?' And he said, 'That is just the way I want it'."

It was to the evidence as we have just related it the court below sustained a demurrer. We are now asked to hold that it erred in that ruling.

Before attempting to dispose of contentions advanced by counsel for appellant it should be stated that the giving of the check under the circumstances and conditions revealed by the evidence did not result in a valid gift *inter vivos* of the sum named therein. That such is true cannot be seriously questioned.

Recently this court had occasion to pass upon the requisites of a gift *inter vivos*. In the case of *In re Estate of Baumstimler*, ante, p. 316, 155 P. 2d 927, we held:

"In order that a gift *inter vivos* be valid, there must be an intention of the donor to transfer title to the property to the donee, a delivery by the donor to the donee, and an acceptance by the donee, and if anything remains to be done, the transaction constitutes only an executory agreement to give and title does not pass." (Syl. ¶ 1.)

Under our statute (G. S. 1935, 52-1706), a check does not amount to an assignment of funds. It is merely an order or request to pay another from one's deposit, which the payee may obtain by calling for it (see *Baker-Evans Grain Co. v. Ricord*, 126 Kan. 107, 267 Pac. 14 and *Anderson v. Elem*, 111 Kan. 713, 208 Pac. 573). Therefore, in order to consummate a gift *inter vivos* of money, until appellant had presented its check for payment and it had been paid or accepted there remained something for it to do.

Nor can it be doubted that the great weight of authority supports the proposition that the mere delivery of a donor's personal check of itself does not constitute a valid gift as it is revocable at any

time prior to its acceptance or payment by the bank on which it is drawn and is revoked by the death of the donor.

A general statement and discussion of the principle to which we have just referred can be found in 38 C. J. S. 841, 843, § 55; 38 C. J. S. 848, 849, § 60; 24 Am. Jur. 779, 781, §§ 95, 98 and Thornton on Gifts and Advancements, 292, § 314.

See, also, 27 L. R. A., n. s., note, 308; 20 A. L. R. (anno) 177; 44 A. L. R. (anno) 625 and 53 A. L. R. (anno) 1119, where numerous cases dealing with the same subject are listed.

Unfortunately, and we use that term advisedly for we are convinced that up to the date of his death Mr. Brown desired to make appellant an object of his bounty, a careful review of the evidence, compels the conclusion that his intention was to give the hospital a check which, when presented and paid, would result in its receiving the amount of money named therein. He recognized the excellent work, both charitable and private, it had been doing in the community where it was located. He appreciated the attention, care and consideration both he and Mrs. Brown had received at the efficient hands of those who were charged with the administration of its affairs. Without being indebted to the appellant and without any preliminary remarks or negotiations he left the check at the desk with the statement "This is for you." True, other conversations took place with respect to the subject of the gift. They have all been related and will be found herein. Without reviewing what was said and done after delivery and when payment had been refused it can be stated those conversations only serve to strengthen such an interpretation. All the testimony so far as it relates to statements, acts and conduct of the interested parties, conclusively evidences that not only Mr. Brown, but those in charge of the hospital and Mr. Adelman who subsequently came into the picture, regarded the entire transaction as having effected a gift of the check which was to be paid when presented at the bank on which it was drawn. No other testimony appears in the record which can either by inference or intendment, be considered as evidencing any other intention or purpose. Faced by such facts and circumstances we can only conclude, as did both the probate and district courts, that since the check had not been cashed on the date of Mr. Brown's death it was revoked by that occurrence under the well-established doctrine that one cannot make his own check the subject of a gift, so that in the absence of payment it can be enforced against the estate of the donor.

Counsel for appellant base their client's right to recovery almost entirely upon the proposition the circumstances revealed by the evidence, including evidence offered by them and rejected by the trial court to which we shall presently refer, disclosed a subscription contract for which there was a valid consideration and that therefore their claim is enforceable as such against the estate of the maker of the check. They refer to our decisions and particularly to *Cotner College v. Hyland*, 133 Kan. 322, 299 Pac. 607 and *Southwestern College v. Hawley*, 144 Kan. 652, 62 P. 2d 850. It is true this court has always been liberal in its construction of subscription agreements and has recognized them as favorites of the law because calculated to foster and encourage public and quasi-public enterprises. We shall do so again and we have no quarrel with the rule announced in the cases cited by appellant or others which deal with the subject. The error in the argument advanced by appellant's counsel is that the facts here do not bring them within the application of the rule there announced. There is not a scintilla of evidence in the entire record, either that received or rejected, to support the contention a subscription agreement was within the contemplation of the parties at the time of the execution and delivery of the check and it most assuredly does not disclose that such an agreement was entered into by them. Under the evidence disclosed by the record we would be obliged to hold, in order to sustain appellant's contention, that the mere delivery of a check in an amount certain to an institution which is engaged in activities both charitable and private and supported in part by the contribution of others interested in its work results in an enforceable subscription contract. This we cannot do. To so hold would nullify long-established and fundamental principles of law pertaining to the validity of gifts, both *causa mortis* and *inter vivos*.

Another argument advanced is that a check imports consideration and it was not necessary for appellant to produce evidence nor to conclusively establish that a consideration existed for its execution and delivery. Perhaps not. There is such a rule but another, just as potent, supplies the answer to this contention. Even though want of consideration is an affirmative defense to a written instrument a plaintiff can dispense with the necessity of proof of its existence if in his case in chief he establishes by his own evidence that no consideration existed for the execution of the con-

tract on which he bases his right of recovery. Here the appellant elected to and did produce evidence, which, as we have seen, conclusively established the gift of a check without consideration. Therefore, the trial court's ruling sustaining the demurrer to its evidence was proper.

A final contention is that there was error in rejecting evidence, most of which related to the character and amount of charitable work performed by appellant in the conducting of the work in which it is engaged and the manner in which it obtained a portion of its operating funds. This evidence could only be material in the event there was testimony to substantiate appellant's theory its claim was in fact based upon a subscription contract rather than gift. Since, as we have concluded, there was no evidence to sustain that contention there was no error in the rejection of such evidence. On the motion for new trial appellant offered the affidavit of C. F. Adelman, who testified as a witness at the trial. Its contents pertained to further and additional conversations had with Mr. Brown regarding his reasons for giving the check and in addition contained the statement that the latter had never expressed to him any desire of revoking or cancelling such check, that he had always insisted he was going to make it good and that on his death bed he requested him to see that appellant got the money on it. All of this testimony could have been offered during the trial and is perhaps, subject to the rule that newly discovered evidence in order to constitute grounds for the granting of a new trial must be such as could not have been produced by reasonable diligence at the trial. Be that as it may, we are not inclined to dispose of the question on that ground. Our examination of the affidavit not only fails to reveal anything tending to show the existence of a subscription contract, but in our opinion fortifies our conclusion the check was delivered as a gift and its donor simply failed to make good on his intention it should be paid out of funds deposited by him in the bank. The appellant was not prejudiced by the rejection of this evidence and its admission even if a new trial had been granted could not change the result. In any event, the trial court did not abuse its discretion in refusing to grant a new trial on the strength of its contents.

Under all the facts and circumstances revealed by the appellant's own witnesses the well-grounded and uniformly accepted principles of law to which we have referred not only justified but required the

sustaining of the demurrer to the evidence when it was presented by the appellee in the court below.

The judgment is affirmed.

HARVEY, C. J., and BURCH, J., not participating.