No. 38,576

In the Matter of the Estate of A. C. Boller, Deceased, U. S. Weary, Executor, *Appellant* and *Cross-Appellee,* v. Marshall Boller, *Appellee* and *Cross-Appellant.*

(244 P. 2d 678)

Opinion filed May 10, 1952.

T. M. *Lillard,* of Topeka, argued the cause, and O. B. *Eidson, Philip H. Lewis* and *James W. Porter,* all of Topeka, and U. S. *Weary,* Executor, *pro se,* of Junction City, were with him on the briefs for the appellant.

I. M. *Platt,* of Junction City, argued the cause, and *Chas. I. Platt,* of Junction City, was with him on the briefs for the appellee.

The opinion of the court was delivered by

Thiele, J.: This appeal arises from the allowance of a demand against a decedent's estate.

A. C. Boller, a resident of Geary county, died testate on January 31, 1949, and on February 1, 1949, his will was admitted to

probate and U. S. Weary was appointed and qualified as executor and duly gave notice of his appointment. On October 19, 1949, Marshall W. Boller, a brother of the decedent, filed his petition in the probate court seeking performance of an oral contract with A. C. Boller under which he was to receive specific real and personal property. Under proper procedure this petition was transferred to the district court. In that court the executor filed a motion to make definite and certain, which was denied. We are told the executor also filed a demurrer, raising the defense of the statute of frauds, and that thereafter the claimant amended his petition.

The claimant's original petition is long and must be summarized. Petitioner alleged that for many years prior to his death decedent owned a farm of 355 acres lying east of Junction City; that decedent employed him to manage and operate the farm; that such arrangement was terminated about August, 1942, and he sought and obtained employment in Wichita; that about April or May, 1943, decedent came to Wichita and negotiated with him to return to Junction City and to manage and operate all of decedent's farming operations; in the negotiations decedent stated he was in ill health and could not carry on successfully without the aid and assistance of claimant and decedent desired him to return and take over the management as he had done in the past, and after considerable negotiations and several visits by decedent, decedent orally promised and agreed with him that if he would return decedent would pay him a reasonable wage, enough to live on or a share of the crops, and in addition would upon decedent's death make provision for claimant by giving claimant the Irvine farm of 195 acres, which was specifically described, and would give him all of the machinery, livestock and equipment upon said farms, so that upon decedent's death, claimant would have 195 acres of good land, together with adequate equipment to operate it and sufficient stock to make it a profitable venture for claimant. It was further alleged that:

". . . At said time, decedent explained to claimant that because of his ill health, life was uncertain with him and that claimant would be assisting decedent, making his life more pleasant, and thus prolonging his life, and that claimant would receive at the time of decedent's death, the aforesaid real estate, together with all of the implements, farming tools and farming equipment, together with the livestock upon the premises at the time of his death."

Claimant also set out a list of many pieces of machinery, some livestock and other personal property which he stated had been orally given and delivered to him by the decedent in his lifetime. He

also alleged that a certain combine had been purchased by decedent for him but that it had not been delivered by the seller to the decedent prior to decedent's death. He also alleged his full performance on his part, but that decedent died without performing his part. The prayer of the petition was for specific performance and a decree adjudging claimant to be the owner of the real and personal property described.

Amendments made to the petition and interlarded therein were that decedent suffered from a heart ailment and stated to claimant that he desired to have claimant with him as much as possible; that decedent's wife would not live on the farm and was not interested in it; that decedent desired claimant to live on the farm so that he could be near and a companion to decedent; that decedent desired to have claimant's companionship, advice and counsel and that their companionship meant much to decedent, and that if claimant would not come back decedent would sell his farm and come to Wichita so that he could be near claimant.

The executor's answer made certain admissions not necessary to note, denied generally and alleged that decedent paid claimant in full for all services rendered. He also alleged that if decedent gave claimant a certain bedroom suite, claimant later sold and delivered it to decedent. He prayed that the claim be disallowed. In view of arguments later considered, we here note it was not pleaded as a defense that there was a subsequent written contract between the decedent and the claimant for services, nor was there any allegation the claim was barred by the statute of limitations.

As later shown the involved property was worth a considerable sum and as was to be expected the claim was vigorously asserted and just as vigorously resisted; and testimony of about thirty witnesses and other evidence was offered, which if competent and believed, warranted judgment for the claimant, or against him.

At the conclusion of the trial the claimant and the executor each filed requested conclusions of law and of fact, as well as briefs and thereafter the trial court made fifteen conclusions of fact and eight of law which we summarize or quote as follows:

### Conclusions of Fact

1. A. C. Boller died January 31, 1949, leaving a will which was admitted to probate. He left a widow but no child.

2. Boller's estate was inventoried and appraised at $140,730.46. (Although not specifically found, testimony showed that the real estate in question was valued at $35,400 and the personal property at $9,600.)

3. Within time Marshall Boller filed his claim which was transferred to the district court where the case was tried.

"4. The real estate described in the Inventory, above referred to, originally was the property of Jacob Boller, the father of the claimant and decedent, and at the time of the death of the said Jacob Boller, the real estate was willed to Marshall E. Boller, the claimant herein. In 1940 claimant issued a deed wherein he conveyed the real estate to the decedent, A. C. Boller. Litigation followed in this court in which the question as to whether the deed was absolute or only a mortgage was decided in favor of the decedent A. C. Boller and the full title to the real estate was decreed to be vested in him.

"5. Claimant, who lived on the real estate, and had been employed by the decedent, continued in the employ of his brother, the decedent, and the litigation between them did not disturb the close relationship and fraternal ties existing between them.

"6. In the latter part of July, 1942, claimant terminated his employment with decedent, and entered into the employment of the Boeing Company at Wichita, Kansas. While so employed in Wichita, he received numerous visits from decedent, who made numerous trips to Wichita and had numerous talks with claimant, during which talks he made various efforts to induce claimant to return to Junction City and assist decedent in his farming operations. Finally decedent informed claimant of the poor condition of decedent's health, and on that account he wanted to be near claimant and have claimant near him, and to have the benefit of claimant's companionship, and informed claimant that if claimant would return to Junction City and work with decedent on the farm and stay with him, he would give claimant the Irvine Farm and the livestock, machinery and equipment when he (decedent) was 'through with it' and pay him enough to live on or a share of the crops. Claimant accepted this offer or promise on the part of decedent, and returned to the farm which he, together with the decedent, managed and cared for until the time of decedent's death. After claimant returned to Junction City from Wichita, and re-entered the employment of decedent, claimant looked after the farming operations of decedent, and in addition thereto assisted decedent in his various other business interests and particularly the handling and shipping of manure from Ft. Riley to various points, even to the extent of making contracts in claimant's name with the Federal Government for handling the manure, for and on behalf of the decedent. Decedent knew, at the time he began negotiating with claimant in Wichita, endeavoring to induce claimant to return to Junction City to live, and assist in carrying on decedent's farming operations, that decedent was suffering from a heart ailment, that life was uncertain with him, and he was desirous of having his brother (the claimant) with him; that decedent had a very warm affection for claimant and desired claimant's companionship, and in order to induce claimant to return to Junction City and to decedent's employment in connection with his farming operations, decedent made the offer above set out, which offer was accepted by claimant; and, relying upon decedent's promises above set out, terminated his employment in Wichita, returned to the farm, worked with and for the decedent until dece-

dent's death; gave him companionship and affection, and during all of the time a filial relationship existed between them.

"7. After claimant's return to Junction City from Wichita, a condition of harmony, companionship and association existed between claimant and decedent. Decedent would stop claimant from his work that they might be together over a cup of coffee or coke, or just be with decedent whenever he was ill or under any pressure or distress. Both claimant and decedent were solicitous of the welfare of the other, going together to Kansas City to consult a specialist with reference to heart affliction from which both suffered. At the time of his last illness decedent requested claimant's presence and assistance in seeking medical advice and counsel, and requested and obtained claimant's presence at the hospital during his last illness for the greater part of the time until his death. Decedent had given specific instructions that his wife be not notified of his illness.

"8. Decedent displayed a vital interest in Claimant's future, and expressed himself as being desirous of assuring claimant's future security or a reasonably certain living in the event of decedent's death prior to the death of claimant, and frequently mentioned such desire to various friends and companions. He gave claimant outright a tractor and baling equipment and mentioned to several witnesses his interest in the welfare, health and future of the claimant and in addition thereto discussed with certain of the witnesses the various items that were the property of the claimant.

"9. The nature of the contract between decedent and claimant was such that required claimant's companionship and affection, as well as carrying on the duties required of him on the farm, in such manner that the same could not be adequately compensated in money. Claimant at all times carried out the wishes and will of the decedent.

"10. During all the time after decedent acquired the title to the Boller farms he made his home on the farms, and spent most of his time in Junction City, Wichita, and in the vicinity of those cities while his wife, Ada Boller, retained her residence in Kansas City, Missouri, and seldom visited decedent in Junction City or at the farm.

"11. Shortly before decedent's death, and about January 14, 1949, he purchased from L. J. Willcoxon, a self propelled Massey-Harris combine with Thomas Drive, for which he paid $5,091.80. At the time of the purchase decedent stated that he was buying the combine 'for Marshall' but no muniments of title were delivered, and the combine was not delivered by L. J. Willcoxon until some time after the death of the decedent.

"12. A Chevrolet truck was purchased by decedent for claimant's use at some time during claimant's employment to decedent, which was used in the operation of the farming business and for transportation of claimant from the farm to his home and back. No muniments of title were ever delivered to claimant, and the title and license stood in the name of the decedent at the time of his death."

13. Lists equipment and livestock on farm at time of decedent's death.

• 14. Legal description of Irvine farm.

"15. At the time of his death there were on the premises of the decedent a sawed off shot gun and a single barrelled pump gun, both claimed by the claimant."

CONCLUSIONS OF LAW

"1. It has been established by clear and satisfactory evidence, and it is held: that a valid contract was entered into between decedent and claimant, which began on June 1, 1943 at the time claimant terminated his services at the Boeing Plant at Wichita, Kansas, and returned to the farm in Junction City; that said contract was not abrogated, set aside or receded from by either party during the life of the decedent.

"2. The services performed by claimant for decedent in companionship and filial relationship, association and obedience of claimant to the wishes of decedent, together with his labor on the farm and in other business affairs of decedent were of such nature that they could not be and were not intended to be compensated for in money.

"3. Claimant is entitled to specific performance of the contract entered into and as set out in his petition for the allowance of his claim.

"4. Claimant is the legal owner in fee simple and entitled to the immediate possession of the real estate described in Conclusion of Fact No. 14, together with the personal property listed in Conclusion of Fact No. 13, above.

"5. No sufficient evidence has been presented to justify a finding of ownership of the two shot guns in claimant, and they are held to be assets of the estate.

"6. The Chevrolet 1½ ton truck was the property of the decedent and remained his property at the time of his death, and no right or title to the same passed to claimant. It was used as a part of the farm equipment, however and passes to claimant under Conclusion of Law No. 4, above.

"7. The Massey-Harris combine with Thompson attachment was intended as a gift, but the gift was not completed *inter vivos* and the same is held to be an asset of the estate.

"8. Claimant is entitled to an accounting by the executor for rents and profits derived from the real estate and personal property listed in Conclusions of Fact No. 13 and No. 14 from the time of the filing of the claim until possession of the property is placed in claimant."

In due time the executor and decedent's widow filed a motion to have the trial court vacate conclusions of fact Nos. 5, 6, 7, 8, 9, 10 and 13, and conclusions of law Nos. 1, 2, 3, 4, 6 and 8, as well as a motion for a new trial. Both motions were denied. Although not included in either the abstract or counter-abstract, it is apparent that the claimant filed a motion to amend conclusions of fact No. 13 by including two pieces of equipment, and the motion was allowed. Without detailing, it may be said the trial court rendered judgment in favor of the claimant on the conclusions of fact and of law, as amended.

In due time the executor perfected his appeal from the judgment and rulings adverse to him, and the claimant perfected his appeal from conclusion of fact No. 11, conclusion of law No. 7, and all adverse rulings.

Under his specification of errors appellant presents for our consideration the questions later discussed.

Appellant first contends that appellee cannot recover on the alleged oral agreement because when he returned to Junction City to re-enter decedent's employ, the parties executed a written contract into which were merged all prior negotiations.

This contention appears to be an afterthought and one that was not presented to the trial court. The fact there was a claimed superseding written contract was not pleaded as a defense; at the trial no objection was made to the claimant's evidence tending to prove the oral contract on which he relied, in the conclusions of fact and of law requested by the executor he sought only conclusions that the oral contract had not been proved and claimant was not entitled to recover, but requested no conclusions that the oral contract had been superseded by a written one. And it is significant that in the conclusions made by the trial court, there is nothing said about the written contract or its effect. In his motion to vacate and set aside the trial court's conclusions, the matter of a superseding written contract was not mentioned, nor was there any request then made for any other or additional conclusion bearing thereon, nor was there any specific reference thereto in the motion for a new trial. With such a state of the record we might well, and probably should, refuse to consider the contention on the ground it was not presented to nor considered by the trial court (see e. g. *State Bank of Stella v. Moritz,* 146 Kan. 23, Syl. ¶ 1, 69 P. 2d 15, and *Potts v. Lux,* 168 Kan. 387, 399, 214 P. 2d 277, and cases cited therein). Nevertheless we have concluded to discuss the contention briefly. The evidence disclosed that the oral contract relied on was made sometime prior to June 1, 1943, and covered employment and services for a period until decedent would die, and thereafter claimant left his job in Wichita and returned to the decedent's farm at Junction City. At that time decedent had planted a corn crop of about 100 acres on the Irvine farm, an activity in which claimant had had no part. On June 5, 1943, and after claimant had returned to Junction City, the decedent and the claimant entered into a written contract that claimant was to receive one-third of the corn crop for his share of the work, such as helping curl, harrow, cultivate and harvest in the fall, and claimant and his wife were to live in designated quarters and to receive their board while caring for the crop. Appellant directs attention to authorities

that a subsequent written contract embodies all prior understandings and agreements, and where the written contract is complete and free from ambiguity and neither fraud nor mistake is pleaded, parol testimony of a contemporaneous oral agreement relating to the same matter is incompetent, citing, among other authorities, the following: *Milich v. Armour,* 60 Kan. 229, 56 Pac. 1; *Railway Co. v. Truskett,* 67 Kan. 26, 72 Pac. 562; *Brenn v. Insurance Co.,* 103 Kan. 517, 175 Pac. 383; *Hazelton v. Chaffin,* 109 Kan. 175, 177, 197 Pac. 870; *Guaranty Co. v. Grabske,* 111 Kan. 271, 207 Pac. 322; and *Radebaugh v. Dillon,* 119 Kan. 492, 204 Pac. 406.

We recognize the general rule contended for, but there are exceptions to it, and among them is one that the parol evidence rule does not preclude the admission of extrinsic evidence of a valid prior parol agreement which is separate both in form and substance from the written contract, although related in a general way to it. If the oral agreement does not vary or contradict the written agreement nor invade the particular field which the latter undertakes to cover, but instead has for its subject a matter the parties might naturally deal with separately, the oral agreement may be enforced. See 32 C. J. S. 970, *et seq.,* 20 Am. Jur. 992, and annotation 70 A. L. R. 752. When it is borne in mind that the written contract covered only a corn crop on a 100-acre tract for only a part of the crop season of a single year, and for certain specified work, while the claimed oral contract covered a much larger tract, different services, and for a period of time that did not coincide with the written contract and that there was performance under the oral contract for a period of years after the written contract had been fully performed, the conclusion seems unavoidable that neither contract varied nor contradicted the other, nor did one invade the particular field covered by the other. In our opinion the evidence offered by the claimant was competent. Whether it was to be accepted as true and relied on was for the trial court and not this court, and it may not be said either as a question of law or of fact that the written contract superseded the oral contract and that claimant was not entitled to recover on the oral contract.

Appellant further contends that the services rendered by the claimant were adequately compensated and specific performance would be inequitable. In developing this contention appellant stresses the fact that the contract was advantageous to the claimant, that the decedent paid the claimant about $22,000 in cash be-

tween June 1, 1943, and the time of his death, and minimizes the services performed. He assumes that claimant worked as a mere farm laborer, whereas there is proof not only that he worked but that he supervised the operation of the entire farm of almost 400 acres. Not only that but claimant and decedent had extensive outside dealings, as are reflected in the trial court's conclusions of fact. If it be said these outside activities were beyond the purview of the oral contracts, it may just as well be said that a considerable part of the money decedent paid claimant was for such services. It cannot be gainsaid that claimant in accepting decedent's offer, intended to better himself. It is rather inconceivable he would have accepted if he had thought otherwise. We cannot and do not intend to weigh the evidence, but it is quite apparent that the operations of the farm and the performance of the manure hauling operations and perhaps other activities resulted in a substantial increase in the assets of the decedent and that although claimant was paid a substantial sum of money it was only a portion of the increase which accrued to the decedent. Under the oral contract, if credited, and it was, a very substantial payment to claimant was intended. Under such circumstances neither the trial court was, nor would this court be, warranted in saying that a lesser payment was adequate. If that were done the effect would be to make a new contract for the parties.

Appellant also contends that the pleadings and evidence do not show the type of case which warrants a departure from the rule that equity will not specifically enforce an oral promise to devise real estate, and summarizes his argument thus: The contract must be sufficiently certain and definite in subject matter and purpose and must be clearly and certainly established by the evidence; the facts must be such as to take the contract out of the operation of the statute of frauds and there must be no circumstances or conditions which make enforcement of the contract inequitable, citing *Brown v. Slusser,* 130 Kan. 834, 288 Pac. 743; *Laupheimer v. Buck,* 135 Kan. 631, 11 P. 2d 721; *Potts v. McDonald,* 146 Kan. 366, 69 P. 2d 685; *Dixon v. Fluker,* 155 Kan. 399, 125 P. 2d 364; and *In re Estate of Henry,* 157 Kan. 471, 142, P. 2d 717. Our attention is further directed to *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665, where it was held the contract is the foundation of the claimant's right to recover, and that to take such a case out of the statute of frauds the acts of performance

relied on must have been done solely in pursuance of the contract and with a view to its being performed (*Long v. Duncan,* 10 Kan. 294) and that the acts relied upon must clearly appear to have been done in pursuance of the contract and not because of some filial or other relation (*Bowen v. Galloway,* 125 Kan. 568, 264 Pac. 1038). The rules of law are sound and find support in the cases cited. In making application of them, however, the appellant directs attention to evidence from which conclusions favorable to him may be drawn. In one particular, he calls attention to a portion of the trial court's finding No. 7, that "decedent would stop claimant from his work that they might be together over a cup of coffee or coke" and says there was no evidence to support it. We agree that if, there was such evidence it is not shown in the abstract or counter abstract, but there is evidence otherwise of the close relationship existing between the decedent and claimant, as set out in the finding. Conceding for the moment that claimant could have been adequately compensated in money for his work on the farm and that he was so compensated, and that in such a case specific performance would not be decreed, we have to take into consideration the companionship and personal assistance otherwise which claimant furnished the decedent at decedent's request, as found by the trial court. There was evidence supporting the finding, which the trial court found was clear and satisfactory. The burden of so finding was on the trial court, not on this court. (See e. g. *Schuler v. Rehberg,* 145 Kan. 176, 179, 64 P. 2d 571; *Jones v. Davis,* 165 Kan. 626, Syl. ¶ 2, 197 P. 2d 932; *In re Estate of Spark,* 168 Kan. 270, 275, 212 P. 2d 369.) This court has considered cases where services to be rendered were personal in their nature, such as care, love, affection or companionship, and has held that such services were not compensable in money and that contracts calling for the performance of such services to be paid by the conveyance of particular real or personal property were of equitable nature and that the party fully performing was entitled to specific performance. (See e. g. *Bray v. Cooper,* 145 Kan. 642, 66 P. 2d 592; *Dent v. Morton,* 148 Kan. 97, 79 P. 2d 875; *In re Estate of Henry,* 157 Kan. 471, 474, 142 P. 2d 717; *In re Estate of Spark,* supra, and cases cited therein.) In view of the rule recognized in the above cases, we cannot agree with appellant's contention the contract should not be specifically performed.

Appellant also contends that the claimant's action was barred by the statute of limitations. We note that no such defense was pleaded in the answer to the claimant's amended petition nor does it appear this question was ever presented to the trial court. However, in view of our holding in *In re Estate of Hill,* 162 Kan. 385, Syl. ¶ 7, 176 P. 2d 515, and cases cited in the opinion, that an executor has no power to waive the statute of limitation, we shall consider the contention briefly, which is that in the claim as originally filed claimant did not allege any agreement for the performance of personal services and that the amendment to include such an allegation was not filed until sometime after nine months after the appointment and qualification of the executor and was too late (G. S. 1949, 59-2239). Coupled with this argument is an argument the first petition filed did not sufficiently allege an agreement definite in its terms and purposes. We are satisfied, as was the trial court, that the claim as originally filed did sufficiently allege as matters of inducement the state of the decedent's health, that he could not carry on without the aid and assistance of claimant, that because thereof claimant would be assisting him by returning to Junction City and that by reason thereof claimant agreed to return and take over the management of the farms, and that claimant performed. The amendments subsequently made amplified the substance of the original claim but in our opinion the effect of the amendments went only to state more perfectly what was possibly imperfectly or incompletely stated in the original claim, and did not introduce new matter. The contention the claim was barred is not sustained.

We come now to appellee's cross-appeal and his contention that the trial court erred in its conclusion of law No. 7 based on its conclusion of fact No. 11. Appellee filed no motion to set aside the conclusion of fact No. 11, nor any motion for a new trial, and the conclusion of fact is binding on him. He argues as a question of law that the trial court misinterpreted our decision in *In re Estate of Baumstimler,* 159 Kan. 316, 153 P. 2d 927, where it was held:

"In order that a gift *inter vivos* be valid, there must be an intention of the donor to transfer title to the property to the donee, a delivery by the donor to the donee, and an acceptance by the donee, and if anything remains to be done, the transaction constitutes only an executory agreement to give and title does not pass." (Syl. ¶ 1.)

In our opinion the trial court did not err. Under its conclusion of fact there was neither actual nor constructive delivery of the

combine which appellee says was given to him. No title passed to him and there was no gift. As bearing on the question of what constitutes a gift, see also *In re Estate of Brown,* 159 Kan. 408, 155 P. 2d 445, and *Reno County Community Hospital Ass'n. v. Woodford Estate,* 171 Kan. 97, 105, 229 P. 2d 730.

A study of the record as abstracted and counter-abstracted and a consideration of appellant's and appellee's claims of error, lead to the conclusion that the judgment of the trial court should be and it is affirmed.